Filed 6/4/18

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

        Plaintiff and Respondent,

        v.

JORGE GONZALEZ et al.,

        Defendants and Appellants.

S234377

Ct.App. 2/4 B255375

Los Angeles County
Super. Ct. No. YA076269

A jury convicted defendants Jorge Gonzalez, Erica Michelle Estrada, and Alfonso Garcia of the first degree felony murder of Victor Rosales and found true a special circumstance allegation that the murder was committed during a robbery. The amended information had accused defendants of murder with *malice aforethought*, a term encompassing two kinds of offenses: murder with the deliberate intention to unlawfully take another's life, or the commission of a willful act with conscious disregard that the natural and probable consequences of the act are dangerous to human life. (*People v. Elmore* (2014) 59 Cal.4th 121, 132-133.) This accusation triggered the trial court's duty to instruct the jury on lesser included offenses of murder with malice aforethought — such as involuntary manslaughter — if substantial evidence had been presented at trial to support a jury finding of the lesser included offense rather than first degree murder. (See *People v. Banks* (2014) 59 Cal.4th 1113, 1160 (*Banks I*).) Defendants also requested instructions on defenses to murder with malice

SEE DISSENTING OPINION

aforethought.  Yet the trial court instructed the jury only on first degree *felony* murder, without instructing the jury on murder with malice aforethought.  Nor did the trial court instruct the jury on lesser included offenses of murder with malice aforethought, or defenses applicable to murder with malice aforethought.  The question we must resolve in this case is whether the jury's finding on the robbery-murder special circumstance renders harmless the trial court's error in failing to instruct the jury on murder with malice aforethought, or on lesser included offenses of murder with malice aforethought, as well as defenses to murder with malice aforethought.

What we conclude is that the special circumstance finding here indeed renders the trial court's error harmless.  The prejudice arising from the failure to instruct on lesser included offenses and defenses creates a specific kind of risk — that the jury, faced with an all-or-nothing choice between first degree murder or acquittal, convicted defendants of first degree felony murder even though the prosecution failed to satisfy its burden.  Such an error is harmless if defendants cannot demonstrate a reasonable probability that the jury would have — without the error — reached a different result.  (See *People v. Blackburn* (2015) 61 Cal.4th 1113, 1132.)  A jury's other findings, such as the resolution of a felony-murder special-circumstance allegation, may render the error harmless by resolving factual issues such as the truth of a felony-murder charge against the defendant. (See, e.g., *People v. Castaneda* (2011) 51 Cal.4th 1292, 1327-1329.)  Defendants contend, however, that the jury's decision to convict on first degree felony murder in this case all but compelled the jury to find true the robbery-murder special circumstance because of the jury's purported desire for logical consistency — thereby preventing us from holding the error harmless.  They fail to take sufficient account of the fact that when the jury here found true the robbery-murder special circumstance, it necessarily made additional findings beyond those necessary for

2

felony murder — such as the finding that aiders and abettors had the intent to kill, or acted with reckless indifference to human life — undercutting defendants' arguments based in logical consistency. Moreover, these additional findings were incongruous with the jury believing defendants' non-robbery theories of the case. Finally, a reasonable jury is assumed to follow instructions correctly, and the jury here was given clear instructions that required it to consider the relevant issue — whether the prosecution proved that each defendant committed, attempted to commit, or aided and abetted robbery beyond a reasonable doubt. Given these factors, we can conclude the jury in this case resolved the relevant factual dispute through the special circumstance finding, so the trial court's error was harmless. Accordingly, we affirm the Court of Appeal's ruling.

## I.

On October 6, 2009, Victor Rosales died from a single gunshot wound to the chest. Defendant Gonzalez allegedly shot Rosales as part of a robbery that Gonzalez planned and attempted to perpetrate with the assistance of defendants Estrada and Garcia. In an amended information, the prosecution jointly charged defendants Gonzalez, Estrada, and Garcia for the killing of Rosales. What the information alleged in count one is that defendants murdered Rosales with malice aforethought, in violation of Penal Code section 187, subdivision (a).[1] The information also alleged a robbery-murder special circumstance, which requires a finding that defendants committed the murder during the commission of a robbery (§ 190.2, subd. (a)(17)), and alleged that a principal was armed with a firearm during the murder (former § 12022, subd. (a)(1)). In count two, the information alleged that Gonzalez shot at an occupied vehicle in violation of section 246. As

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

3

to both counts, the information alleged that Gonzalez personally and intentionally discharged a firearm, which caused Rosales great bodily injury and death (former § 12022.53, subds. (b), (c) & (d)).

On the day of the shooting, Alejandro Ruiz went to Rosales's house and picked him up. Ruiz told police officers that he drove Rosales to meet with defendant Estrada for lunch. When Ruiz and Rosales arrived at the meeting place, Ruiz saw Estrada accompanied by two Hispanic males walking towards the car. Ruiz stated that Estrada pointed at Rosales and that one of the males walked up to the passenger door, produced a handgun, and shot Rosales. The shooter then walked around the car to the driver's side and attempted to pull Ruiz out of the vehicle. Ruiz hit the accelerator and drove away, back to Rosales's house.

Anthony Stephen Kalac was granted use immunity and testified against defendants. Kalac testified that on the day of the shooting, he had done multiple hits of heroin and then went to defendant Garcia's house, where he did more heroin. Garcia, Kalac, and Garcia's girlfriend, Jennifer, then went to a hotel room at the Crystal Inn where they met defendants Estrada and Gonzalez. At the hotel room, Garcia suggested that they smoke crystal methamphetamine, but Gonzalez stated that they had no drugs in the room. In the ensuing discussions on where to obtain drugs, Estrada told Garcia and Gonzalez that she knew a person, Rosales, who they could "come up on" for drugs, which Kalac understood meant "to rob." According to Kalac, Estrada said that Rosales was a drug dealing former boyfriend who had been "physical" with her and who had previously given her a black eye. Kalac observed that Gonzalez, who had been sleeping with Estrada, became "agitated" when Estrada talked about the prior physical abuse. Kalac had $35 on him that he gave to Estrada in exchange for a promise of heroin from the robbery.

Kalac then heard Estrada call Rosales to order $150 of methamphetamine and $50 of heroin. Estrada told Rosales to meet at the laundromat across the street

4

from the Crystal Inn on Prairie Avenue in 30 minutes. After the phone call, Garcia said that he would act as lookout. Garcia and Gonzalez left the hotel room.

Kalac and Jennifer helped load bags into Estrada's black Cadillac so that she could move to the American Inn, a hotel a few minutes down the street. Once at the American Inn, Estrada and Jennifer left Kalac in the room, after which Kalac decided to go home. While walking home, Kalac saw Gonzalez and Garcia, who told Kalac that "shit went bad."

Later on the day of the shooting, police officers arrested Estrada and Gonzalez at Estrada's house. Police found no weapons on Gonzalez or Estrada. Gonzalez's, but not Estrada's, hands tested positive for gunshot residue. Police arrested Garcia on December 17, 2009, at his house. Garcia attempted to run away, but police apprehended him.

Kalac later testified that he never saw a gun in the room at the Crystal Inn or after the shooting of Rosales. Stefanie San Angelo, Kalac's former girlfriend, heard about the shooting third-hand and told police that Garcia or Gonzalez gave Kalac the gun used in the shooting when they ran into each other on the street. San Angelo talked to Kalac after speaking with the police. Kalac told her that he had gone to buy drugs with Garcia "and there was another guy and female there. They intended to jack somebody. It was either the girl's boyfriend, ex-boyfriend. . . . They contacted him. He came out. They went down to meet with him. [Kalac] stayed in the room. . . . He [the victim] wasn't giving it up. He either tried to run away or drive away. They shot at him, hit him, and that was it."

Estrada and Garcia did not testify during the defense's case, but Gonzalez testified in his own defense. Gonzalez confirmed that he was with Estrada, Kalac, Garcia, and Jennifer at the Crystal Inn on the day of the shooting. Yet instead of planning to rob Rosales, Gonzalez testified that he asked Estrada to call Rosales so that they could purchase crystal methamphetamine. Estrada called Rosales to

5

arrange the transaction. It was Gonzalez's testimony that there was no talk of robbing Rosales and that he had $165 on him on the day of the shooting, and so he had no need to commit robbery. Gonzalez also testified that he did not have a gun or see any guns in the hotel room.

Estrada asked Gonzalez to meet Rosales because Estrada had to pack up and move to a new hotel after the Crystal Inn hotel manager told them to leave. Gonzalez left the hotel, followed by Garcia, to meet Rosales at the laundromat across Prairie Avenue.

After waiting outside the laundromat for 20 to 30 minutes, Gonzalez noticed Rosales sitting in the passenger seat of a car. Rosales was "mad-dogging" Gonzalez, that is, looking at Gonzalez in an aggressive manner. Gonzalez walked over and said, "What's up, Victor?" Rosales did not respond, and Gonzalez repeated his greeting. When Rosales did not respond a second time, Gonzalez asked, "Do you want me to get Erica?" Rosales pointed a handgun at Gonzalez. Gonzalez testified that, out of fear for his life, he grabbed the gun from Rosales. The gun ended up in Gonzalez's right hand. Rosales tried to retrieve the gun by grabbing Gonzalez's right wrist with both hands. As Gonzalez pulled away and turned his body, the gun went off. Gonzalez testified that he did not intentionally pull the trigger or try to kill Rosales.

Gonzalez then ran away and found Garcia. Walking along Prairie Avenue, Gonzalez and Garcia subsequently ran into Kalac. Gonzalez testified that he gave Kalac the gun, but did not tell Kalac to dispose of it.

The trial court instructed the jury on first degree felony murder based on robbery. The trial court did not instruct the jury on any other theory of murder, such as murder with malice aforethought, lesser included offenses of murder with malice aforethought, or defenses to murder with malice aforethought. The jury found defendants guilty of count one for first degree murder based on the felony-

6

murder instruction.  The jury also found true the robbery-murder special-circumstance allegation and not true the allegation that a principal was armed with a firearm.

The jury acquitted Gonzalez of count two for shooting at an occupied vehicle.  As to both counts, the jury found not true the allegation that Gonzalez personally and intentionally discharged a firearm, causing Rosales great bodily injury or death.  Because the jury found the robbery-murder special-circumstance allegation to be true as to each defendant, the trial court sentenced defendants to life imprisonment without the possibility of parole.

Defendants appealed their convictions on a number of grounds.  As relevant here, defendants contended that the trial court erred by failing to instruct the jury on murder with malice aforethought, its lesser included offenses, and its defenses.  Defendants claimed they were entitled to instructions on the lesser included offenses of second degree malice murder, voluntary manslaughter, and involuntary manslaughter, as well as the defenses of self-defense and accident.  The Court of Appeal found any such error harmless under the standard in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).  Specifically, the Court of Appeal held that because the jury convicted defendants of first degree murder based on a robbery-felony-murder theory and found a robbery-murder special-circumstance allegation to be true, "it is not reasonably probable that appellants would have obtained a more favorable outcome had the jury been instructed on the lesser included offenses of murder."  The Court of Appeal expressly disagreed with *People v. Campbell* (2015) 233 Cal.App.4th 148 (*Campbell*), which held that a jury's guilty verdict on felony murder and true finding on a robbery-murder special-circumstance allegation do not render the failure to instruct on lesser included offenses of murder with malice aforethought harmless under *Watson*.  (*Campbell*, at p. 174.)

7

We granted review to resolve whether the jury's finding of a felony-murder special circumstance renders harmless a trial court's failure to instruct on murder with malice aforethought, lesser included offenses of murder with malice aforethought, and defenses to murder with malice aforethought.

## II.

Whether an error proves harmless or not depends on the kind of error at issue. In particular, it depends on whether the error constitutes a lapse under the federal Constitution or state law, and whether it is structural in nature. We evaluate nonstructural state law error under the harmlessness standard set forth in *Watson*, *supra*, 46 Cal.2d at pp. 836-837. That standard requires us to evaluate whether the defendant has demonstrated that it is " 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Id.* at p. 837; *People v. Hernandez* (2011) 51 Cal.4th 733, 746 [holding that it is "the defendant's burden under *Watson* . . . to establish a reasonable probability that error affected the trial's result"].) In contrast, we evaluate the harmlessness of violations of the federal Constitution under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, which requires reversal unless the error is harmless "beyond a reasonable doubt." (*Id.* at p. 24.) Whether a violation of state law or federal constitutional law, structural error results in per se reversal. (See *People v. Anzalone* (2013) 56 Cal.4th 545, 553 [" ' "[U]nder the California constitutional harmless-error provision some errors . . . are not susceptible to the 'ordinary' or 'generally applicable' harmless-error analysis — i.e., the *Watson* 'reasonably probable' standard — and may require reversal of the judgment notwithstanding the strength of the evidence contained in the record in a particular case." ' "]; *Arizona v. Fulminante* (1991) 499 U.S. 279, 306-310 [holding that structural defects in a trial proceeding are per

8

se reversible].) Because of these varying standards, we address the nature of the error at issue in this case before turning to harmlessness.

The failure to instruct on lesser included offenses supported by substantial evidence was state law error. Under California law, trial courts must instruct the jury on lesser included offenses of the charged crime if substantial evidence supports the conclusion that the defendant committed the lesser included offense and not the greater offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-156 (*Breverman*); *People v. Shockley* (2013) 58 Cal.4th 400, 403 ["A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' "].) That duty exists because of the right under the California Constitution " 'to have the jury determine every material issue presented by the evidence' " — and the court's duty persists irrespective of whether the parties request such an instruction. (*Breverman*, at p. 153, quoting *People v. Modesto* (1963) 59 Cal.2d 722, 730; see also *Breverman*, at p. 155 [stating that the trial court has a sua sponte duty to act because such a duty helps prevent error arising from the " 'strategy, ignorance, or mistakes' of *either* party"].) Our cases emphasize that the lesser included offense requirement protects the jury's " 'truth-ascertainment function.' " (*Ibid.*, quoting *People v. Barton* (1995) 12 Cal.4th 186, 196.) The jury's exposure to "the full range of possible verdicts — not limited by the strategy, ignorance, or mistake of the parties . . . ensure[s] that the verdict is no harsher or more lenient than the evidence merits." (*People v. Wickersham* (1982) 32 Cal.3d 307, 324; *People v. Smith* (2013) 57 Cal.4th 232, 239–240 [" '[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.' "]; see also *People v. Eid* (2014) 59 Cal.4th 650, 657 ["A jury instructed on only the charged offense might be tempted to convict the defendant

9

' "of a greater offense than that established by the evidence" ' rather than acquit the defendant altogether"]; *People v. St. Martin* (1970) 1 Cal.3d 524, 533; cf. *Keeble v. U.S.* (1973) 412 U.S. 205, 212-213.)

Whether a trial court commits error by omitting an instruction on a lesser included offense depends not only on whether the evidence supports the possible commission of an alternative crime, but whether that alternative crime constitutes a "lesser included offense" as we have defined it. We have established two tests for whether a crime is a lesser included offense of a greater offense: the elements test and the accusatory pleading test. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228.) Either of these tests triggers the trial court's duty to instruct on lesser included offenses. Under the elements test, one offense is another's "lesser included" counterpart if all the elements of the lesser offense are *also* elements of the greater offense. (*Id.* at p. 1227.) Under the accusatory pleading test, a crime is another's "lesser included" offense if all of the elements of the lesser offense are also found in the *facts alleged* to support the greater offense in the accusatory pleading. (*Id.* at p. 1228 [discussing circumstances where, because the accusatory pleading alleged that defendant was a felon as part of a charge of "carrying a concealed firearm," a lesser included offense of that alleged crime would be "being a felon in possession of a firearm"].)

In this case, defendants were accused of committing murder with malice aforethought. This accusation triggered the duty to instruct on lesser included offenses of that charge if there was substantial evidence that defendants committed the lesser, but not the greater offense, supporting such instructions. Murder with malice aforethought results in a second degree murder conviction — assuming all other elements of the offense are proven — where the defendant had an intent to kill or acted with conscious disregard that the natural and probable consequences of the act or actions were dangerous to human life. (*People v. Elmore*, *supra*, 59

10

Cal.4th at pp. 132-133.) If the defendant instead had an intent to kill and the killing was also deliberate and premeditated, the jury could convict the defendant of first degree murder. (*People v. Saille* (1991) 54 Cal.3d 1103, 1114-1115; *People v. Van Ronk* (1985) 171 Cal.App.3d 818, 822-823.) Lesser included offenses of first degree premeditated murder include second degree murder, voluntary manslaughter, and involuntary manslaughter.

Like the Court of Appeal, we assume without deciding that substantial evidence could have supported a jury finding that defendants committed a lesser included offense of murder with malice aforethought rather than first degree murder. Specifically, we assume that defendants correctly contend that substantial evidence supported instructions of second degree malice murder, voluntary manslaughter, and involuntary manslaughter. In light of the assumption that substantial evidence supported these instructions, the murder accusation triggered the duty to instruct on lesser included offenses of murder with malice aforethought even though, at the prosecution's request, the trial court instructed the jury on *only* felony murder.[2] (*Banks I*, *supra*, 59 Cal.4th at p. 1160 ["[S]econd degree murder was plainly a lesser included offense of felony murder *as charged in count 8*. Count 8 charged defendant with willfully killing [the victim] with malice aforethought. . . . [I]t is evident that second degree murder was a lesser included offense of felony murder as charged in count 8, which alleged not merely that defendant killed in the course of a robbery but that he did so willfully and

---

[2] We have previously declined to determine whether the lesser included offenses of murder with malice aforethought are also lesser included offenses of felony murder under the elements test. (See *People v. Taylor* (2010) 48 Cal.4th 574, 623; see also *People v. Valdez* (2004) 32 Cal.4th 73, 114, fn. 17.) Because the accusatory pleading test applies, we need not reach the issue here.

11

maliciously." (Italics added.)].) So under this assumption, the trial court erred by failing to instruct on lesser included offenses of murder with malice aforethought.

According to Gonzalez, this error violated federal constitutional law. Although we have long recognized the duty to instruct on lesser included offenses under *California* law, neither we nor the United States Supreme Court recognizes a similar duty to instruct on lesser included offenses under *federal constitutional* law — at least in noncapital cases. (*Breverman*, *supra*, 19 Cal.4th at pp. 168-169; see *Schad v. Arizona* (1991) 501 U.S. 624, 645-647 [in capital cases, requiring at least a single noncapital third option between the capital charge and acquittal].)

Gonzalez also contends that the trial court committed federal constitutional error by failing to instruct explicitly on murder with malice aforethought. To the extent this argument claims that the trial court should have instructed on second degree murder, Gonzalez's argument is simply seeking an instruction on a lesser included offense, which is state law error. (See *Banks I*, *supra*, 59 Cal.4th at p. 1160.) To the extent Gonzalez contends it was federal constitutional error not to instruct on an *alternative* theory of first degree murder, namely, first degree premeditated murder, Gonzalez only cites cases involving the failure to instruct on the *elements* of an offense. (See *United States v. Gaudin* (1995) 515 U.S. 506, 509-510, 522-523; *People v. Merritt* (2017) 2 Cal.5th 819, 824.) Such a violation is categorically different from a failure to instruct on alternative theories of first degree murder. When a court fails to instruct the jury on an element of an offense, the error violates the federal Constitution because a jury must find the defendant guilty of every element of the crime of conviction beyond a reasonable doubt. By contrast, the trial court's failure to instruct the jury on an alternative theory that would have allowed it to convict defendants of the *same crime* does not deprive defendants of their right to a jury determination of the elements of the crime of conviction, and is not federal constitutional error.

12

Finally, we have yet to determine whether a trial court's failure to instruct on a requested affirmative defense instruction supported by substantial evidence is federal constitutional error or state law error. (See *People v. Salas* (2006) 37 Cal.4th 967, 984 (*Salas*).) We need not decide that issue here. The duty to instruct on a defense such as self-defense or on accident[3] only would have arisen if the trial court instructed on murder with malice aforethought and its lesser included offenses because they are not defenses to felony murder. (See *In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1; *People v. Cavitt* (2004) 33 Cal.4th 187, 197.) If the failure to instruct on murder with malice aforethought and lesser included offenses was harmless because it is not reasonably likely that the jury would have found defendant guilty of the lesser included offenses, the trial court's failure to instruct on defenses is necessarily harmless as well.

Gonzalez also argues that the trial court committed a structural error when it omitted instructions on murder with malice aforethought, its lesser included offenses, and its defenses. Here too Gonzalez fails to persuade. The trial court's failure to instruct on lesser included offenses and defenses of murder with malice aforethought is subject to harmless error review. (See *Breverman*, *supra*, 19 Cal.4th at p. 176; *Salas*, *supra*, 37 Cal.4th at p. 984.) And as to the failure to instruct on alternative theories of first degree murder, Gonzalez fails to present a cogent theory of what prejudice arises from the trial court's omission of such

---

[3]     Defendants are mistaken in their assertion that "accident" is an affirmative defense. Instead, it is a request for an instruction that negates the intent element of malice murder. (*People v. Jennings* (2010) 50 Cal.4th 616, 675 [noting that accident is not an affirmative defense, but a theory that "attempt[s] to raise a doubt concerning an element (intent) of a crime that the prosecution must prove beyond a reasonable doubt"].) Still, a trial court must provide a requested pinpoint instruction on such issues where "there is evidence supportive of the theory." (*Ibid.*, quoting *Saille*, *supra*, 54 Cal.3d at p. 1119.)

13

instructions. At most, the trial court's failure to instruct on alternative theories was part of the reason why the failure to instruct on lesser included offenses created an all-or-nothing choice. We can address such prejudice through harmless error review.

## III.

We now turn to whether the jury's robbery-murder special-circumstance finding renders harmless the trial court's error when it failed to instruct on murder with malice aforethought, lesser included offenses of murder with malice aforethought, and defenses to murder with malice aforethought. The prejudice arising from the failure to give such instructions is the risk that the jury ignored its instructions and convicted the defendant of an offense — in this case, robbery-based felony murder — for which the prosecution did not carry its burden. The jury might have been convinced that the defendant was guilty of some lesser included offense and, as a result, tempted to convict of a greater offense rather than acquit. (See *Eid*, *supra*, 59 Cal.4th at p. 657 ["A jury instructed on only the charged offense might be tempted to convict the defendant ' "of a greater offense than that established by the evidence" ' rather than acquit the defendant altogether."].) Still, our case law establishes that a true felony-murder special-circumstance finding can render such error harmless. As we have previously observed, a true special circumstance finding requires a jury to find that the killing occurred during the commission of a felony. Accordingly, such a finding necessarily demonstrates the jury's determination that the defendant committed felony murder rather than a lesser form of homicide. (See *People v. Lewis* (2001) 25 Cal.4th 610, 646 (*Lewis*) ["Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions."]; *People v. Castaneda*, *supra*, 51 Cal.4th at pp. 1327-

14

1329; *People v. Elliot* (2005) 37 Cal.4th 453, 475-476; *People v. Horning* (2004) 34 Cal.4th 871, 906; *People v. Koontz* (2002) 27 Cal.4th 1041, 1085–1087; *People v. Earp* (1999) 20 Cal.4th 826, 885-886.)[4]  Such a finding therefore renders harmless the failure to instruct on lesser included offenses of murder with malice aforethought and the associated prejudice created by an all-or-nothing choice.

Nonetheless, defendants believe that *Earp* and the rest of our prior cases are distinguishable because the trial court instructed the jury on premeditated first degree murder *and* felony murder in those cases, whereas here, as was the case in *Campbell*, the trial court instructed the jury on *only* felony murder.  The *Campbell* court held that this distinction makes a difference because, in our prior cases, the jury had the option of finding the defendant guilty of first degree murder based on premeditation and deliberation without also finding a special circumstance true. (*Campbell*, *supra*, 233 Cal.App.4th at pp. 167-168.)  This option for the jury to not find the special circumstance true gave the *Campbell* court "confidence" in the special circumstance finding.  (*Ibid.*)  In contrast, where the trial court instructs only on felony murder, the *Campbell* court held that there is no such confidence because "the decision to convict the defendant of [felony] murder essentially

---

**4**    The parties dispute whether the standard in *People v. Sedeno* (1974) 10 Cal.3d 703 applies.  Under *Sedeno*, the only way to demonstrate harmlessness of the failure to instruct on lesser included offenses was to show that the "factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions."  (*Id.* at p. 721.)  But we have since clarified that *Watson* applies to the failure to instruct on lesser included offenses.  (*Breverman*, *supra*, 19 Cal.4th at pp. 175-176.)  Under *Watson*, the error is harmless unless there is a reasonable probability of a different result absent the error.  But under *Lewis*, such a reasonable probability does not exist if "the jury necessarily decide[d] the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions."  (*Lewis*, *supra*, 25 Cal.4th at p. 646.)  So we clearly can still rely on a jury's other findings to the extent they are not somehow affected by instructional error.

15

compels [jurors] . . . to further find the special circumstance allegation true." (*Id.* at p. 168; see also *id.*, at p. 168, fn. 13.) Defendants similarly argue that the felony-murder conviction "essentially compell[ed]" the jurors to find the robbery-murder special-circumstance allegation true. Defendants contend that the jury would have wanted to keep its findings logically consistent and would also have wanted to cover up its failure to follow the jury instructions on the felony-murder conviction. As a result, defendants argue that the special circumstance finding provides little insight into the jurors' conclusions and cannot render the trial court's instructional error harmless.

Defendants' arguments fail to persuade. Because we are addressing state law error, defendants must show that a different result was reasonably probable under the *Watson* standard. (See *Watson*, *supra*, 46 Cal.2d at pp. 836-837; *People v. Blackburn*, *supra*, 61 Cal.4th at p. 1132.) The robbery-murder special-circumstance finding here demonstrates that a different result was not reasonably probable. Despite defendants' contentions, we see little reason to conclude that the special circumstance finding was "essentially compelled" by the felony-murder conviction because of some desire for logical consistency. The trial court specifically instructed the jury to take the questions of felony murder and the special circumstance separately, and the special circumstance finding required additional elements beyond those necessary to convict of felony murder. Moreover, the findings on the additional special circumstance elements are incongruous with defendants' contention that they committed a lesser crime than felony murder. In light of these additional findings and the presumption that juries understand and follow instructions, the special circumstance finding prevents defendants from establishing a reasonable probability that the jury would have reached a different result absent the trial court's failure to instruct on lesser included offenses of, and defenses to, murder with malice aforethought.

16

The structure and contents of the jury instructions demonstrate why the special circumstance finding was not "essentially compelled." The trial court instructed the jury on first degree felony murder and a robbery-murder special circumstance. The special circumstance instructions required the jury to only address the special circumstance finding *after* convicting on felony murder, and specified that the prosecution must prove the special circumstance allegation beyond a reasonable doubt separately as to each defendant. The primary elements of the instructions on felony murder and the robbery-murder special circumstance were essentially similar, as both required the jury to find that a killing occurred during the commission of a robbery.[5] But the special circumstance instructions also required findings that were not necessary to the felony-murder conviction. The special circumstance instructions, for example, required the jury to find that each defendant "intended to commit robbery independent of the killing" and that the robbery was not "merely part of or incidental to the commission of that

---

[5]    The instructions on felony murder given to the jury required it to find that (1) the defendant committed, attempted to commit, or aided and abetted a robbery; (2) the defendant had the intent to commit or aid and abet a robbery; (3) either the defendant, or a perpetrator who the defendant was aiding and abetting, committed or attempted to commit robbery; and (4) the perpetrator of the robbery caused the death of another person while committing or attempting to commit robbery. Similarly, the special circumstance instructions required the jury to find that (1) the defendant committed, attempted to commit, or aided and abetted robbery; (2) the defendant intended to commit or aid and abet the perpetrator in committing robbery; (3) the defendant or the person defendant was aiding and abetting personally committed or attempted to commit robbery; (4) the perpetrator did an act that caused the death of another person; and (5) the death and the robbery or attempted robbery were part of one continuous transaction. The instructions on robbery required the jury to find that defendants (1) took someone else's property (2) from another person's possession and immediate presence (3) against the other person's will (4) through use of force or fear (5) with an intent to permanently deprive the other person of the property.

17

murder." The special circumstance instructions also required the jury to find that each aider and abettor either intended to kill or (1) began participating in the crime before or during the killing, (2) was a major participant in the crime, and (3) acted with reckless indifference to human life. The instructions defined a reckless indifference to human life as "knowingly engag[ing] in criminal activity that [the defendant] knows involves a grave risk of death." The jury convicted defendants of felony murder and found the special circumstance true as to each of them. We presume that the jury understood and followed the trial court's instructions in reaching these decisions. (See *People v. Smith* (2007) 40 Cal.4th 483, 517–18 (*Smith*).)

Defendants maintain that the special circumstance finding cannot render the trial court's error harmless, because the jury could not have found the special circumstance false without creating a logical inconsistency with the felony-murder conviction. We are unpersuaded by this argument. The special circumstance instructions here required findings above and beyond what was necessary for the felony-murder conviction. The jury found that the two aiders and abettors who did not shoot Rosales, Estrada and Garcia, either intended to kill or were "major participants" in the crime who acted with "reckless indifference to human life." None of these findings were elements of felony murder. Thus, to the extent the jury believed the prosecution did not meet its burden to demonstrate that the aiders and abettors committed or attempted to commit robbery, it could have found the robbery-murder special-circumstance allegation false as to the aiders and abettors without giving the appearance that it was delivering an inconsistent verdict. This case is thus not meaningfully distinguishable from our prior decisions. (See, e.g., *People v. Horning*, *supra*, 34 Cal.4th at p. 906.) Just as in a situation where the jury receives instructions on premeditated first degree murder *and* robbery-based felony murder, the jury here could have convicted defendants of first degree

murder and refused to find the special circumstance true as to the aiders and abettors in a logically consistent manner.

Nor was the special circumstance aider and abettor finding a foregone conclusion compelled by the record. Indeed, arguments about the contents of the record cut against defendants. The jury would have been unlikely to make the findings regarding aider and abettor intent — which were unnecessary for the felony-murder conviction — if the jury believed defendants committed a lesser crime than robbery-based felony murder. The special circumstance instructions required the jury to find that aiders and abettors to the felony murder — in this case, Estrada and Garcia — either intended to kill or were "major participants" in the crime who acted with "reckless indifference to human life." According to the trial court's instructions, the jury had to base any conclusion that Estrada and Garcia had exhibited reckless indifference on a finding that the defendants "knowingly engage[d] in criminal activities" that they *knew* involved "a *grave* risk of death." (*People v. Estrada* (1995) 11 Cal.4th 568, 577, italics added.) We have held this to mean that "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*People v. Banks* (2015) 61 Cal.4th 788, 801 (*Banks II*).)

This particular conclusion — involving a finding that defendants harbored the intent necessary for aider and abettor liability — is based on the evidence presented at trial. It is at the very least incongruous with defendants' contention that defendants committed a crime of lesser magnitude than robbery-based felony murder. The primary dispute at trial was whether defendants sought to rob Rosales or whether they merely sought to purchase drugs or steal from Rosales. Kalac testified that defendants planned to "come up on" Rosales and another witness, San Angelo, told officers that defendants had planned to "jack

19

somebody." In contrast, at closing argument, defendants' attorneys argued the phrase "come up on" merely indicated an intent to commit theft and did not establish that defendants were going to use force or fear to obtain drugs from Rosales. Moreover, Gonzalez testified that defendants were merely seeking to purchase drugs, not rob or steal drugs. If the jury believed that defendants merely sought to purchase drugs and that purchase went wrong because of Rosales's actions — a perspective consistent with Gonzalez's testimony — the jury would not have concluded that Garcia and Estrada either had the intent to kill Rosales or acted while knowing of a grave risk of death. Gonzalez and Estrada had purchased drugs from Rosales on multiple prior occasions with apparently no near-death experiences.

Similarly, although defendants argued in closing at trial that they merely intended to steal drugs from Rosales *without* using force or fear, the jury appears to have rejected this position. If the jury accepted the position that defendants did not intend to use force or fear, it could not have found under the factual circumstances of this case that non-perpetrators Garcia and Estrada intended to kill Rosales by agreeing to help with such a theft. Moreover, there is little evidence to support the contention that Garcia and Estrada knew that committing theft, which does not involve the use of force or fear, carried a grave risk of death. Indeed, there is no evidence that defendants knew that Rosales had a gun or some other means of resisting a theft that would not also require the perpetrator to use "force or fear" to obtain the drugs. There was certainly a possibility that, after stealing Rosales's drugs, Rosales might have had a gun and might have shot one of the defendants as defendants ran away. But nothing in the record supports the contention that defendants had that possibility in mind or knew that it amounted to a "grave risk." (Cf. *Banks II*, *supra*, 61 Cal.4th at p. 807 [finding insufficient evidence of knowledge of a grave risk of death partly because the defendant did

20

not "knowingly conspire[] with accomplices known to have killed before"].) Indeed, when a detective in this case was asked whether "drug dealers carry guns routinely," the answer was "[n]ot really." And because Ruiz immediately drove Rosales away to an unknown location, this is not a case where defendants' actions after the shooting constituted actions that they knew carried a grave risk of death, such as if they abandoned the dying victim at the site of the crime without calling for medical assistance. Moreover, the prosecutor argued in closing statements that the "inherent risks in robbery of violence, injury, death, it skyrockets" when drug dealers are involved "and that's why [defendants] acted with reckless indifference." No party argued to the jury that such reckless indifference would arise from theft. It is thus unlikely that the jury would have found the special circumstance true if it believed defendants' drug purchase and theft theories. The jury would have had little reason to make these intent findings as to Garcia and Estrada if the jury did not believe beyond a reasonable doubt that defendants sought to commit robbery.

These intent findings also show that defendants are incorrect that the lack of jury instructions on the elements of theft exacerbated their prejudice. A failure to instruct on theft is not error where the jury is charged, as here, with robbery-based felony murder but not robbery. (*People v. Valdez* (2004) 32 Cal.4th 73, 110-111.) Moreover, we note that defense counsel specifically argued that the force or fear element of robbery had not been established at closing argument, rendering the crime a mere theft, which mitigates any potential prejudice arising from the nonerroneous failure to instruct on theft. And to the extent that the lack of such an instruction can constitute error or contribute to prejudice, the error here is harmless because the aider and abettor intent findings make a theft finding unlikely on the facts of this case.

21

We acknowledge that the aider and abettor findings pertain to Garcia and Estrada — and not to Gonzalez. Gonzalez was, after all, the admitted perpetrator of the killing. But the aider and abettor findings as to Garcia and Estrada are sufficient to find harmlessness as to Gonzalez as well on the facts of this case. The primary evidence of robbery presented to the jury was Kalac's testimony that defendants agreed to rob Rosales. Although there may be cases where aiders and abettors and principals have differing intents regarding a crime, defendants here reached a prior agreement and all three of them were involved in the crime. Because the jury believed Garcia and Estrada committed robbery, there is no reasonable probability the jury came to a different conclusion as to Gonzalez.

As a general matter, theft crimes and low-volume drug deals are not the kinds of crimes ordinarily understood to involve a grave risk of death. (*People v. Gomez* (2008) 43 Cal.4th 249, 254 ["Theft by larceny may be committed without force or the threat of violence and may be completed without the victim ever being present"]; *People v. Macafee* (1980) 109 Cal.App.3d 808, 812 [holding, for purposes of a diversion statute, that a drug offense does not involve "a crime of violence or threatened violence unless the drug offense played some part in the commission of [a] violent crime"].) We find no facts in this case suggesting that a mere theft or the purchase of a relatively small amount of drugs for personal use would give rise to a grave risk of death. Whether or not a jury might reasonably conclude that a theft or drug deal may involve the defendants' subjective appreciation of a grave risk of death in other specific circumstances, we base our conclusion about the implications of the jury's grave risk of death determination on the particular facts of this case.

The weight we give the special circumstance finding is supported by the presumption that jurors understand and follow trial court instructions. (See *Smith*, *supra*, 40 Cal.4th at pp. 517-18.) We consider this a " 'crucial assumption' " —

22

one that " 'underl[ies] our constitutional system of trial by jury.' " (*Ibid.*; *People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17, citing *Francis v. Franklin* (1985) 471 U.S. 307, 325, fn. 9.)  In some circumstances, courts understandably find grounds to consider this presumption rebutted — when the risk that the jury will not follow instructions is sufficiently pronounced.  (See *Bruton v. United States* (1968) 391 U.S. 123, 135-136 ["[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."].)  But we tend to apply such exceptions narrowly and do not extend them without good reason.  (See *Richardson v. Marsh* (1987) 481 U.S. 200, 207-208 [noting that the "narrow exception" to the presumption created by *Bruton* does not apply where a codefendant's out-of-court testimonial statements are not facially incriminating to the defendant, but are incriminating when linked with other evidence].)

The jury here appears not to have faced any heightened risk of disregarding the special circumstance instructions.  Defendants point to the jurors' potential desire to keep their findings logically consistent, perhaps in order to conceal the fact that they previously disobeyed instructions.  But if the jury convicted defendants of robbery-based felony murder even though it believed defendants committed a lesser crime, it is unclear why logical consistency would motivate a jury to make additional findings against defendants by disobeying its instructions a second time in finding the special circumstance true.  Perhaps such behavior is not impossible to envision, but on the facts of this case we cannot conclude that such a scenario has attached to it a reasonable probability.  (*People v. Mena* (2012) 54 Cal.4th 146, 162 [holding that prejudice under *Watson* " 'must necessarily be based upon reasonable probabilities rather than upon mere possibilities' "].)  Indeed, the special circumstance instructions required findings beyond those

23

necessary for the felony-murder conviction — findings in tension with defendants' theories — so no logical inconsistency necessarily arises. Moreover, the jury instructions clearly required the jury to consider the special circumstance allegation separately from the felony-murder conviction under a beyond a reasonable doubt standard. We are thus not persuaded by defendants' contention that the likelihood of a different result rises to a reasonable probability.[6]

Defendants also raise an argument that the firearm-related jury findings show the unreliability of the special circumstance finding. That is not the case. The jury found untrue the allegation that a principal was armed, along with the allegation that Gonzalez personally and intentionally discharged a firearm, and it acquitted Gonzalez of count two for shooting at an occupied motor vehicle. These findings are not irreconcilable with the jury's special circumstance finding, and do not affect the outcome. Even if the jury was not persuaded that Gonzalez was armed, a perpetrator need not be armed with a weapon to create the force or fear necessary for robbery. The force sufficient to establish robbery exists even if there is merely a "quantum [of force] more than which is needed . . . to take the property from the person of the victim." (*People v. Wright* (1996) 52 Cal.App.4th 203, 210; *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709 [holding that evidence of shoving was sufficient for a jury to conclude that a robbery occurred]; *People v.*

---

[6] We express no opinion as to whether this conclusion would apply in cases where the special circumstance finding does not require findings in addition to those necessary for a felony-murder conviction, or where those extra factual findings are foregone conclusions based on the record evidence. For example, in *Campbell*, the special circumstance finding applied to a purported aider and abettor to a robbery who shot a drug dealer — possibly to aid the robbery or possibly as an act of self-defense. In that case, the fact that defendant acted with the knowledge of a grave risk of death was likely a foregone conclusion. Therefore, we express no opinion on whether *Campbell* was correctly decided.

24

*Roberts* (1976) 57 Cal.App.3d 782, 787 [holding that the force necessary to grab a purse and break its strap could support a robbery conviction].) Moreover, the jury could have concluded Gonzalez was not armed and still found defendants had knowledge of a "grave risk of death." The jury may have believed, for example, that the planned commission of a violent crime such as the robbery of a drug dealer who had been physically violent towards Estrada in the past carried a grave risk of death. The prosecution's closing argument on why the jury should find a grave risk of death was based on a similar theory — that the robbery of the drug dealer involved a grave risk of death.

Even if one believed the "grave risk" finding and the conclusion that Gonzalez was unarmed conflict in an irreconcilable manner, the outcome would remain unchanged. There is no compelling reason to think that a grave risk of death would arise from a mere drug deal or theft — as opposed to a robbery — in this case. If the jury understood the circumstances in this case to involve a conventional drug deal or theft of drugs, it is unlikely the jury would have made the additional grave risk of death finding. Such a finding is far more consistent with a scenario involving commission of a robbery.

Where a jury's findings are irreconcilable, we normally attribute such tensions to compromise, lenity, or mistake, and give effect to all of the jury's findings. (*People v. Avila* (2006) 38 Cal.4th 491, 600 [" '[I]f an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both.' "]; see also § 954 ["An acquittal of one or more counts shall not be deemed an acquittal of any other count."]; *People v. Witzel* (1957) 155 Cal.App.2d 486, 489 ["This language clearly means that each count in an indictment or information, which charges a separate and distinct offense must stand upon its own merit, and that a verdict of either conviction or

25

acquittal upon one such charge has no effect or bearing upon other separate counts which are contained therein."].) The dissent contends that any attribution of the jury's firearm-related findings to compromise, lenity, or mistake is counterbalanced by the possibility that the felony-murder special-circumstance finding was the product of compromise, lenity, or mistake instead. (Dis. Opn., *post*, at p. 8.) But what matters most here is that these rulings can be reconciled. And under our prior decisions, we must where possible give effect to both of these findings, assuming an irreconcilable factual inconsistency. The firearm-related findings constitute the jury's determination that it could not be confident — at the level required by the beyond a reasonable doubt standard — about the veracity of certain facts: that a principal was armed or that Gonzalez shot a firearm, even though the jury may have thought the fact true under a lower standard of proof. (Cf. *People v. Santamaria* (1994) 8 Cal.4th 903, 922, quoting *U.S. v. Seley* (9th Cir.1992) 957 F.2d 717, 723 [" 'Instead of meaning that certain acts did not happen, an acquittal means that they were not proved beyond a reasonable doubt' "].)

In contrast, the special circumstance finding constitutes the jury's determination — beyond a reasonable doubt — that a robbery murder occurred, and that it involved a grave risk of death. What the separate grave risk of death finding demonstrates — irrespective of the precise factual underpinnings directly supporting the jury's special circumstance determination — is that the jury could have found the special circumstance false, without risking apparent logical inconsistency with the felony-murder conviction.

Finally, the firearm-related findings are consistent with the conclusion that the jury weighed relatively carefully the evidence at trial. Ruiz told police that one of the male defendants was armed with a gun and shot Rosales without provocation after Estrada pointed at Rosales. Kalac testified that he never saw a

26

gun at any point on the day of the shooting.  Gonzalez testified that he did not have a gun and that the shooting occurred accidentally after Rosales pulled out a gun and pointed it at Gonzalez.  Gonzalez also testified that he gave Kalac the gun after the shooting.  At most, the jury's determinations on the gun-related allegations show that the jury did not have confidence, beyond a reasonable doubt, that Gonzalez was armed and that he "willfully and maliciously" shot the firearm at Rosales and into Ruiz's vehicle.  (CALCRIM No. 965.)  The jury's willingness to acquit Gonzalez and find the gun-related allegations not true provides some indication the jury carefully weighed the evidence, not that we must disregard its separate special circumstance finding.

IV.

The failure to instruct on lesser included offenses of — or defenses to — murder with malice aforethought is error that may be prejudicial.  But the error is not structural, and a special circumstance finding may provide a means of gaining insight into what the jury would have done in the absence of the error.  In this case, the jury's special circumstance determination required findings beyond those necessary for a felony-murder conviction, undermining defendants' claim that the jury would merely seek to avoid the appearance of an inconsistent verdict.  Moreover, these additional findings highlight a separate jury determination — one most consistent with the conclusion that the jury rejected non-robbery theories of what happened.  These fact-specific elements of the special circumstance finding, along with the presumption that juries tend to follow instructions and the fact that the trial court clearly instructed the jury, demonstrates the harmlessness of the error.  The jury's true finding on the robbery-murder special circumstance is thus most consistent with the inference that — even without the asserted error — the jury would have almost certainly found defendants guilty of felony murder.  Consequently, we find no reasonable probability the jury would have reached an outcome more favorable to defendants.  Because of this, we affirm the Court of Appeal's decision.

                                                                **CUÉLLAR, J.**

**WE CONCUR:**
**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**ZELON, J.***

---

* Associate Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

28

**DISSENTING OPINION BY LIU, J.**

Today's opinion holds that the trial court's failure to instruct the jury on murder with malice aforethought and its lesser included offenses and related defenses was harmless. I respectfully disagree.

The instructional error here created "a specific kind of risk — that the jury, faced with an all-or-nothing choice between first degree murder or acquittal, convicted defendants of first degree felony murder even though the prosecution failed to satisfy its burden." (Maj. opn., *ante*, at p. 2.) The record contains ample evidence that could have led the jury to find malice murder or a lesser included offense rather than first degree felony murder.

As the court says, "The primary dispute at trial was whether defendants sought to rob [Victor] Rosales or whether they merely sought to purchase drugs or steal from Rosales." (Maj. opn., *ante*, at p. 19.) In order to find defendants guilty of robbery-based felony murder, the jury had to find that defendants had an intent to rob. The prosecution's main evidence of defendants' intent to rob was the testimony of Anthony Kalac, who was present at the Crystal Inn with defendants Jorge Gonzalez, Erica Estrada, and Alfonso Garcia on the day of the shooting.

According to Kalac, when he arrived at the Crystal Inn, he overheard Garcia suggest to Gonzalez that they smoke methamphetamine. Gonzalez replied that they didn't have "any," which Kalac understood to mean they had no drugs in the room. Kalac said defendants then talked about "finding someone that they

1

could get dope from basically," although he did not recall precisely what they said. Kalac said defendants went "back and forth trying to figure out who they can call." Kalac wanted to buy heroin, so he called a drug dealer he knew and arranged to meet him at a gas station. Kalac left the hotel and waited for his dealer at the gas station; when his dealer did not show up after a few minutes, Kalac returned to the hotel room. He testified that a couple of minutes after his return, Estrada told Gonzalez and Garcia that she knew someone they could "come up on," a phrase Kalac understood to mean "to rob." Kalac recounted that defendants then tried to "figure out an amount to order from the drug dealer" and that they settled on $150 of methamphetamine and $50 of heroin. Kalac testified that Estrada told everyone in the room to be quiet, called Rosales to order drugs, and told Rosales to meet at the laundromat across the street in 30 minutes. Garcia said he would act as a lookout, and Gonzalez and Garcia left the Crystal Inn.

On cross-examination, Kalac admitted that part of the conversation among Gonzalez, Estrada, and Garcia about where to obtain drugs had taken place in Spanish, a language he does not understand. Kalac testified that the only part of defendants' conversation that was in English was about "[w]here they were meeting basically and how long." Kalac further admitted that during his police interview, when Detective Lane said, "In reality you don't know what they were planning at the time," Kalac agreed and said, "I don't know what they were doing." Further, Detective Lane testified that during the interview, Kalac never used the phrase "come up on" in describing his recollection of defendants' conversation at the Crystal Inn, and Detective Lane confirmed that the phrase did not appear in the interview transcript. The first time Kalac mentioned the phrase was at trial.

Kalac also did not comprehend the content of Estrada's phone conversation with Rosales, most of which was in Spanish. Kalac testified that the only parts of

2

Estrada's phone conversation he understood were "30 minutes" and "corner of 112th and Prairie." When Kalac was asked on cross-examination whether he would "equate" his comprehension of Estrada's phone conversation with Rosales "to not knowing what the hell they were talking about," Kalac replied, "Somewhat, yes." Defense counsel subsequently asked, "Is it fair to say that while Erica was talking on the phone to this drug dealer, that most of the conversation you couldn't understand to the extent that they could have been talking about the moon was purple and you wouldn't know?" Kalac replied, "That's correct."

Moreover, Kalac's trial testimony contradicted earlier statements he had made. Kalac testified that after Estrada made her phone call to Rosales, Garcia said he would act as a lookout "[f]or a robbery." Defense counsel then pointed out that Kalac had been asked at the preliminary hearing, "Did [Garcia] say he was going to be a look-out to rob or did he say he was going to be a look-out for a drug transaction?" Kalac had replied, "The drug transaction." At trial, Kalac admitted he had contradicted himself. When asked why his trial testimony was inconsistent with his prior testimony, he said, "I was confused. The lawyer was hitting me with questions left and right. I was basically confused, not listening." Kalac also admitted he had contradicted himself during the preliminary hearing by testifying that he had seen Gonzalez and Garcia enter the laundromat, but then later testifying that he had not.

Finally, Kalac admitted that he had started smoking heroin early in the morning on the day of the shooting and that he was high on heroin from the time he arrived at the Crystal Inn through the aftermath of Rosales's death. In short, the prosecution's main witness had a number of credibility problems. There were ample grounds for the jury to question his testimony, including his claim that defendants intended to rob Rosales.

3

In addition, the evidence showed that defendants had purchased drugs from Rosales before and that they enjoyed discounts from Rosales because of his relationship with Estrada. The jury also heard testimony that Rosales's sister knew were Estrada lived; after the ambulance took Rosales away, his sister led the police to Estrada's home, where Estrada and Gonzalez were arrested. In light of these facts, the jury reasonably could have doubted that defendants intended to rob Rosales. Robbing him would have ended their favorable pricing on drugs, and Rosales, through his sister, would have known where to find defendants to retaliate.

Alejandro Ruiz, who went with Rosales to the drug transaction and witnessed the shooting, did not testify at trial. Ruiz's account was introduced only through Officer Vasquez's trial testimony, including his statement that when he and Rosales arrived at the meeting place, "Estrada pointed at Rosales and . . . one of the males walked up to the passenger door, produced a handgun, and shot Rosales." (Maj. opn., *ante*, at p. 4.) Ruiz's statements were never subjected to cross-examination, and the jury had no reason to necessarily credit his version of events given his complicity in the drug transaction. Gonzalez, testifying in his own defense, said that he did not have a gun and that the shooting occurred accidentally after Rosales pulled out a gun and threatened Gonzalez.

The jury apparently had doubts about Ruiz's statements because it acquitted Gonzalez of the charge of shooting at an occupied vehicle and returned "not true" findings on every firearm-related allegation. If any of the defendants had been armed, the jury should have found true the allegation that "one of the principals was armed with a firearm in the commission of [the] crime." But the jury did not — which suggests it may have had doubts about whether defendants went to meet Rosales with an intent to take the drugs by means of force or fear. There was no

4

evidence that any defendant was carrying a different weapon or attempted to injure Rosales by some other means.

In sum, there is more than substantial evidence from which the jury could have doubted that defendants intended to rob Rosales, a required element of robbery-based felony murder. The jury could have instead convicted defendants of malice murder or lesser included offenses had it been properly instructed. The instructional error presented the jury with a choice of finding either felony murder or no homicide offense at all — precisely the kind of all-or-nothing choice that our state Constitution and case law forbid. (Maj. opn., *ante*, at pp. 9–10.)

Today's opinion says we can have confidence in the felony-murder verdict because the jury's true finding on the robbery-murder special circumstance "necessarily demonstrates the jury's determination that the defendant[s] committed felony murder rather than a lesser form of homicide." (Maj. opn, *ante*, at p. 14.) The special circumstance required the jury to make additional findings beyond the elements of felony murder — i.e., that "the defendant intended to commit robbery independent of the killing," that "the commission of robbery was [not] merely part of or incidental to the commission of [the] murder," and that "[t]he act causing the death and the robbery or attempted robbery were part of one continuous transaction." If the jury harbored any doubts as to whether defendants committed felony murder, the court contends, the jury would have declined to make these additional findings. (Maj. opn., *ante*, at p. 23.)

Whatever force this logic might have in the abstract, it is unpersuasive in light of the evidence presented to the jury in this case. The prosecution's only theory was that the three defendants decided while at the Crystal Inn to ask Rosales to bring them drugs for purchase and then to rob him. Every piece of evidence the prosecution proffered was calculated to support its theory that Rosales was shot and killed in the course of a robbery. The jury ultimately found

5

defendants guilty of felony murder. Based on the evidence the jury heard, this verdict could *only* have been based on the theory that defendants intended and attempted to rob Rosales and, during the commission of the robbery, caused Rosales's death. But this is tantamount to finding that "the defendant[s] intended to commit robbery independent of the killing," that "the commission of robbery was [not] merely part of or incidental to the commission of [the] murder," and "[t]he act causing the death and the robbery or attempted robbery were part of one continuous transaction." In other words, the only theory on which the jury could have convicted defendants of felony murder *necessarily entailed* a true finding on the robbery-murder special circumstance.

The additional findings required by the robbery-murder special circumstance thus provide no independent confirmation of the jury's felony-murder verdict. Instead, the jury's "decision to convict the defendant[s] of [felony] murder essentially compel[led] them, even if they harbor[ed] doubt as to guilt of the underlying felony, to further find the [robbery-murder] special circumstance allegation true." (*People v. Campbell* (2015) 233 Cal.App.4th 148, 168.) It does not matter that "[t]he special circumstance instructions required the jury to only address the special circumstance finding *after* convicting on felony murder" (maj. opn., *ante*, at p. 17) or that "the jury instructions clearly required the jury to consider the special circumstance allegation separately from the felony-murder conviction under a beyond a reasonable doubt standard" (*id.* at pp. 23–24). The jury could not have known what consequences would flow from its findings on the special circumstance allegations, since the jury was instructed not to "consider or discuss penalty or punishment in any way when deciding whether a special circumstance, or any other charge, has been proved." Once the jury returned a guilty verdict on felony murder, a true finding on the robbery-murder special circumstance was a foregone conclusion.

6

I acknowledge that the jury's true finding on the aider and abettor special circumstance does independently suggest that the jury genuinely believed Estrada and Garcia went to the encounter with Rosales with an intent to rob him. That special circumstance required the jury to determine whether, as aiders and abettors, Estrada and Garcia (1) acted with intent to kill or (2) were major participants in the crime whose participation began before or during the killing, and who acted with reckless indifference to human life. The instructions defined "reckless indifference to human life" as "knowing[] engage[ment] in criminal activity that [the defendant] knows involves a grave risk of death." This finding, which goes beyond the elements of felony murder, suggests that the jury believed Estrada and Garcia did not merely seek to purchase drugs or steal them without using force or fear. (Maj. opn., *ante*, at pp. 20–21.) And I agree that if the jury believed this of Estrada and Garcia, it would be hard to conclude that the jury did not also believe this of Gonzalez. (*Id.* at pp. 21–22.)

But what are we to make of the jury's "not true" finding on the allegation that "one of the principals was armed with a firearm in the commission of [the] crime"? How is it possible that the jury believed *both* (1) that Estrada and Garcia (and, by extension, Gonzalez) engaged in criminal activity that they knew involved a grave risk of death, *and* (2) that none of them was armed with a firearm in the commission of the crime? Today's opinion suggests these findings are "not irreconcilable" because the jury could have believed that defendants used some means of creating force or fear other than a firearm. (Maj. opn., *ante*, at p. 24.) But no evidence or argument at trial supports this theory. The court also suggests the jury may have believed that defendants knew "the robbery of a drug dealer who had been physically violent towards Estrada in the past carried a grave risk of death." (Maj. opn., *ante*, at pp. 24–25.) Yet the court cites no evidence in support of this theory either. It is true that the prosecution in closing argument pointed to

7

the "inherent risk" of robbing "a drug dealer on the side of the street" as opposed to "a jewelry store or a bank." But given that "the risk of death inherent in an *armed* robbery" is not sufficient to establish reckless indifference to human life (*People v. Banks* (2015) 61 Cal.4th 788, 808, italics added), how could the jury have properly inferred the required mens rea from the risk inherent in an *unarmed* robbery of a drug dealer? It is far more straightforward to conclude, in light of the evidence and argument at trial, that the jury's findings on the aiding and abetting special circumstance and the firearm-related charges are simply inconsistent.

I agree that "[w]here a jury's findings are irreconcilable, we normally attribute such tensions to compromise, lenity, or mistake, and give effect to all of the jury's findings." (*Id.* at p. 25.) In giving effect to all of the jury's findings, however, why should we conclude (1) that the aider and abettor special circumstance finding confirms the validity of the felony-murder verdict, and the firearm-related findings can be chalked up to compromise, lenity, or mistake, instead of (2) that the firearm-related findings call into question the felony-murder verdict, and the aider and abettor special circumstance finding can be chalked up to compromise, lenity, or mistake? There is no additional jury finding that tends to independently confirm one interpretation or the other. Even if the court were correct that the first interpretation is more plausible (and I am not persuaded it is), there would still be a reasonable probability that the second interpretation is what in fact occurred.

I would thus hold there is a reasonable probability that the jury would have reached an outcome more favorable to defendants if it had been instructed with malice murder and its lesser included offenses and related defenses, instead of being presented with an all-or-nothing choice between finding felony murder or no homicide offense at all. The evidence at trial and the confusing — indeed, contradictory — jury findings do not give me confidence that felony murder was

8

proven and found beyond a reasonable doubt.  Gonzalez, Estrada, and Garcia have been convicted of special-circumstance murder and sentenced to life imprisonment without the possibility of parole, the most severe penalty short of death, without a fair and accurate determination of their guilt.  The judgment should be reversed.

**LIU, J.**

**I CONCUR:**

**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Gonzalez

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 246 Cal.App.4th 1358
**Rehearing Granted**

_____

**Opinion No.** S234377
**Date Filed:** June 4, 2018

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Scott T. Millngton

_____

**Counsel:**

Robert Franklin Howell, under appointment by the Supreme Court, for Defendant and Appellant Jorge Gonzalez.

Valerie G. Wass, under appointment by the Supreme Court, for Defendant and Appellant Erica Michelle Estrada.

Jonathan E. Demson, under appointment by the Supreme Court, for Defendant and Appellant Alfonso Garcia.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, Michael R. Johnsen, Louis W. Karlin and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert Franklin Howell
Post Office Box 71318
Las Vegas, NV  89170
(702) 834-3845

Valerie G. Wass
556 South Fair Oaks Avenue, Suite 9
Pasadena, CA  91105
(626) 797-1099

Jonathan E. Demson
1158 26th Street, #291
Santa Monica, CA  90403
(310) 405-0332

Michael R. Johnsen
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-4920