Filed 12/29/23  P. v. Gaines CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B317632 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA115137) |
| v. | |
| RAPHAEL GAINES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura L. Laesecke, Judge.  Affirmed with instructions.

Robert A. Werth, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant and defendant Raphael Gaines appeals from a judgment of conviction for multiple crimes based on his repeatedly beating his former girlfriend and using force and the threat of force to obtain money from her. He challenges the sufficiency of the evidence to support two of these convictions, contends numerous trial errors occurred, challenges the court's imposition of the aggravated term on count 1, and seeks to correct the characterization of count 1 in the abstract of judgment. We agree that the abstract of judgment must be corrected, but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Charges and Convictions

A criminal information charged Gaines with: (1) two counts of inflicting corporal injury on a girlfriend in violation of Penal Code section 273.5, subdivision (a),[1] (2) attempted extortion in violation of sections 518 and 664, (3) second degree robbery in violation of section 211, and (4) making a criminal threat in violation of section 422, subdivision (a). A jury found him guilty of all crimes charged. As to counts 1 and 3, the jury found true the alleged aggravating circumstance that, within the past seven years, he had sustained a prior conviction for injuring a spouse. The court sentenced Gaines to the aggravated term of four years on count 1, and one-third the midterm (2 years concurrently) on counts 2, 3, and 4, and, pursuant to section 654, stayed the sentence on count 5.

---

[1] Subsequent statutory references are to the Penal Code.

2

## B. Evidence Presented At Trial

### 1. *Testimony of G.D.*

G.D., the victim of the crimes charged, testified as follows:

G.D. and Gaines met online and began dating in early 2020. To assist Gaines financially, G.D. paid for several of Gaines's expenses, including three car payments. After Gaines lost his job, he wanted G.D. to give him more money. When G.D. refused, Gaines became physically abusive. In approximately May 2020, G.D. reversed the three $200 car payments she had made on his behalf, and Gaines's car was repossessed three to four weeks later.

#### a. *Events of July 2, 2020*

On the morning of July 1, 2020, G.D. and Gaines were at a hotel together. Gaines claimed G.D. owed him $5,000 for the repossessed vehicle. To placate Gaines, G.D. told him she would get money from her retirement account to pay him. The following morning Gaines "figured out" G.D. had not been "fully truthful" and repeatedly struck her with an open hand on her head, shoulders and back, then kicked her when she fell to the ground. These actions constituted the factual basis for count 1, "willfully inflict[ing] corporal injury resulting in a traumatic condition" on a romantic partner. (§ 273.5, subd. (a); see *id.* subd. (a)(3).)

Later that morning they drove G.D.'s vehicle to her bank. Gaines told G.D. that if she came out without the money, he would break her jaw and "physically embarrass [her]" in front of everyone. G.D. applied for a $5,000 loan, but the application was denied. When the bank employee offered to call the police on G.D.'s behalf, G.D. declined the offer because she was afraid of what Gaines might do. These events were the factual basis for count 2, attempted extortion. (See §§ 518, 664.)

3

The bank employee offered to tell Gaines that G.D. was unable to withdraw money because of banking security measures that had tightened during the pandemic. When the employee approached Gaines, he refused to speak with her and told G.D. to get in the car and drove to a more secluded part of the parking lot. Once there, Gaines began yelling at G.D., saying that she was wasting his time by lying and playing games, and that he wanted his money. He began "whaling . . . on [G.D.]," hitting her head, shoulders, and back with an open hand. These actions formed the factual basis for count 3, willful infliction of corporal injury on a romantic partner, the second section 273.5 violation.

G.D. then drove Gaines to the location where he was staying and dropped him off. G.D. was in a lot of pain. When she arrived home she took pictures of bruises on her arms, shoulder, and chest. The prosecution offered these photographs into evidence. These bruises had not been present the day before (on July 1).

Later that evening, Gaines called G.D. and demanded she pay him the $200 impound fee for his vehicle. Gaines became verbally abusive when G.D. refused. He told her he was coming over to her house to collect the money and would hurt her and her family if she did not pay him. In fear of Gaines, she left her house with her children. Gaines called her again and again threatened and verbally abused her. Portions of these two phone calls were recorded by G.D.'s son and played for the jury.

b.      *Events of July 3, 2020*

On July 3, 2020, Gaines contacted G.D. and again demanded she reimburse him for the impound fee. G.D. withdrew the money from an ATM and took it to Gaines. Gaines entered G.D.'s vehicle and directed G.D. to drive to the mall saying he wanted to buy new clothes. Although she drove to the mall, she refused to go in,

4

whereupon Gaines struck her face, knocking her head into the window. Eventually Gaines got out of the vehicle and started walking toward the mall.

When G.D. realized Gaines had her cell phone, she decided to accompany him to the mall so she could retrieve it. In the mall, G.D. attempted to approach a security guard, but Gaines grabbed her by the neck and directed her to an ATM. He demanded that she withdraw $700, and said to her, " 'You are playing games. You're playing with my money.' . . . 'I will seriously hurt you and kill you.' " G.D. withdrew $100 and gave it to Gaines to "get him off [her] back." These events formed the factual basis for count 4, robbery. (§211.)

Gaines then demanded that they go to another ATM so G.D. could withdraw more money to give to him. Gaines threatened to kill G.D. if she did not comply, and G.D. felt afraid. These events formed the factual basis for count 5, criminal threat. (§ 422, subd. (a).)

They drove to a bank where Gaines again demanded money. She withdrew $150 and gave it to Gaines. She told Gaines she could not get any more money out of the bank. Gaines then drove to where he was staying. G.D. asked Gaines to return the $250 she had given him. He refused and stated that if she did not give him the rest of the money he would " 'beat the . . . shit out of [her].' " G.D. then drove home. That night, July 3, 2020, G.D. reported "everything" to the Long Beach Police Department. She made subsequent police reports as well, but did not specify when she had done so. G.D. ended her relationship with Gaines after the July 3 incidents.

## 2. *Testimony of G. Rodriguez*

G. Rodriguez, an employee at G.D.'s bank, testified regarding G.D.'s July 2, 2020 encounter at the bank as follows:

Rodriguez was working that day when G.D. came into the bank, and Rodriguez helped her apply for a loan. G.D. appeared very nervous and as if she had been crying. When Rodriguez told G.D. the loan application was denied, G.D. "instantly" began crying. When counsel asked Rodriguez whether, "at that point[,] . . . [G.D.] explain[ed] to [Rodriguez] why she was applying for the loan" or "[w]hy she was there [at the bank]," Rodriguez testified (over defense counsel's objection) that G.D. "mentioned that she was in an abusive relationship and that that person drove her there and . . . [was] waiting outside in the car, and that she couldn't walk out without giving him the money." When Rodriguez offered to call the police, G.D. explained she did not want to do so because "it would make things worse" and because she "feared for her life." Rodriguez did not see any injuries on G.D.

## 3. *Defense Case*

At trial, defense counsel attempted through cross-examination of G.D. and the presentation of other evidence to portray G.D. as a scorned lover who was fabricating her allegations of abuse because she was upset that Gaines was involved with another woman.

Defense counsel showed G.D. several text message exchanges. Some were between G.D. and Gaines after the July 3 incident, in which the two appeared friendly and discussed finding Gaines an apartment with G.D. as a co-signor on the lease. Some were between G.D. and a female acquaintance of Gaines in which G.D. claimed G.D. was pregnant with Gaines's child. G.D. also sent the acquaintance pictures G.D. had taken of her bruises. G.D. denied

6

sending or receiving any of these messages. G.D. admitted she took Gaines's cell phone without his permission, secretly used his password, and contacted some women with whom he was exchanging messages in order to find out the nature of the women's relationships with Gaines.

Defense counsel also introduced a series of exhibits showing G.D. made a claim to her bank that three payments from her account to "Mas Financial" were fraudulent. Defense counsel asserted these were the car payments on Gaines's behalf that had been refunded to G.D. G.D. denied this and claimed the exhibits related to different fraudulent charges Gaines made on her ATM card.

Defense counsel also offered Long Beach police officer testimony and police records reflecting that G.D. did not report the July 2 or July 3 incidents until July 14 and July 21, respectively. One Long Beach police officer testified that he responded to a domestic violence call at G.D.'s apartment on July 4, 2020 and did not recall G.D. describing any of the specific events of July 2 or 3 at that time. Police records reflected that G.D. did tell the officer on July 4 that " '[Gaines] has threatened . . . in the past to harm her. [She] [j]ust received a text from [Gaines] saying he was going to come over with people.' "

Below we provide additional factual detail as needed to address Gaines's claims of error.

## DISCUSSION

Gaines seeks relief on appeal based on the following arguments: (1) The prosecutor's closing argument misstated the reasonable doubt standard; (2) The evidence was insufficient to support both counts of violating section 273.5; (3) The jury should have been instructed on the lesser included offense of spousal

7

battery; (4) Rodriguez's testimony included inadmissible hearsay; and (5) The court did not have the statutorily required basis to impose an aggravated term at sentencing. Lastly, Gaines asks that we correct the abstract of judgment because it inaccurately describes the conviction on count 1. We address each argument in turn below.

### A. Prosecutorial Error

#### 1. *Prosecutor's Statements Explaining Reasonable Doubt*

The court instructed the jury with CALJIC No. 2.90 on the reasonable doubt standard of proof. That instruction defines reasonable doubt as "not a mere possible doubt . . . because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."

The prosecutor quoted this instruction in his closing argument and rebuttal argument, but went on to further explain the meaning of "beyond a reasonable doubt" in a manner that Gaines argues misrepresented (and lessened) the prosecution's burden of proof.

The prosecutor asked the jury to "consider" the reasonable doubt instruction "in tandem" with the circumstantial evidence instruction (CALJIC No. 2.01). The prosecutor stated: "[CALJIC No. 2.01] is a different instruction but it is the last sentence. It says if, on the other hand, one interpretation of the evidence appears to you to be reasonable and the other interpretation unreasonable, you must accept the reasonable interpretation and reject the unreasonable. That's really what proof beyond

a reasonable doubt boils down to."  Later, the prosecutor stated: "The defense and I are arguing about possibilities in the case.  And, ladies and gentlemen, based on the evidence, the only reasonable possibility is that these five crimes occurred.  What they're arguing to you, [defense counsel], is an unreasonable possibility and, therefore, you must reject it.  Here's why it is unreasonable."  The prosecutor then argued that the defense wanted the jury to believe G.D. was a liar, but that believing this required the jury to accept that there is no explanation for the photographs of her injuries, other than G.D. somehow "beat[ing] herself up" to punish Gaines.  The prosecutor argued it would be "absurd" for a person to "inflict bruises on their own body in order to get back at somebody else."  Likewise, the prosecutor argued that the defense's theory that G.D. was a liar meant that Rodriguez's testimony must also be fabricated, and that there was a "big conspiracy" or plan between G.D. and Rodriguez to punish Gaines.  The prosecutor argued this was also "absurd" and "unreasonable."  Lastly, the prosecutor noted that, in order to accept the defense version of events despite the recorded phone calls of Gaines threatening G.D., the jury would need to believe that G.D. "somehow got on some sort of photoshop program and did a bunch of fancy audio editing, fabricated [Gaines's] voice to come up with this angry tone of voice."  The prosecutor noted that although it is "possible" G.D. did this, such a possibility was "totally unreasonable."  Defense counsel repeatedly objected to these statements as improper argument, and the court overruled the objections.

### 2.    *The Posited Prosecutorial Error*

A prosecutor's misstatement of the reasonable doubt standard is " 'prosecutorial error,' " based on which relief may be granted on appeal.  (See *People v. Centeno* (2014) 60 Cal.4th 659, 667; see *id.*

at pp. 666–667 & 672 (*Centeno*).)  Although "[a]dvocates are given significant leeway in discussing the legal and factual merits of a case during argument[, citation] . . . 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' " (*Id.* at p. 666, quoting *People v. Marshall* (1996) 13 Cal.4th 799, 831.) Thus, it is error for a prosecutor to imply that "so long as [the prosecutor's] interpretation of the evidence was reasonable, the People [have] met their burden." (*Centeno, supra*, at p. 672.) Gaines argues this is exactly what the prosecutor's description of the reasonable doubt standard did.

We disagree.  The prosecutor here argued that the *only* reasonable interpretation of evidence was that it met the prosecution's burden, and that the jury should reject the defense's arguments as to why the evidence did not meet the prosecution's burden, because they required the jury to accept unreasonable assumptions.  In the primary authority Gaines cites for this point, the California Supreme Court expressly permits such argument, stating that "[i]t is permissible to argue that the jury may reject impossible or unreasonable interpretations of the evidence and to so characterize a defense theory." (*Centeno, supra*, 60 Cal.4th at p. 672.)  On reply, Gaines contends that the prosecutor's argument "equat[ing] proof beyond a reasonable doubt with the circumstantial evidence instruction and inform[ing] the jury that reasonable doubt 'boils down' to whether defense counsel's argument is reasonable" implicitly conveyed that the prosecution could meet its burden by offering only *a* reasonable interpretation of the evidence consistent with guilt.  This characterization ignores the context in which the prosecution made these arguments:  namely, responding to the defense theory of the case.  Understood in this context, the

10

comments did not encourage the jury to use reasonable possibilities as a substitute for evidence, as *Centeno* proscribes, but rather proposed that the only doubt one might have about whether the evidence supported all elements of the crime would be an unreasonable doubt—that is, one requiring an unreasonable interpretation of the evidence. This is an accurate and permissible statement of the law. (See, e.g., *People v. Cowan* (2017) 8 Cal.App.5th 1152, 1162 [prosecution statement that "beyond a reasonable doubt means 'you're firmly convince[d] that guilt is the only reasonable interpretation of the evidence' " was "an accurate statement of the meaning of beyond a reasonable doubt"].) No prosecutorial error occurred.

## B.     Section 273.5 Violations

Gaines raises various arguments relating to his two convictions for violating section 273.5. That section addresses, inter alia, the "willful[ ] inflict[ion of] corporal injury resulting in a traumatic condition upon a victim . . . [¶] . . . [¶] . . . with whom the offender has, or previously had, a[ ] . . . dating relationship." (§ 273.5, subds. (a) & (a)(3).) The statute defines " 'traumatic condition' " as "a condition of the body, such as a wound, or external or internal injury . . . whether of a minor or serious nature, caused by a physical force." (*Id.*, subd. (d).) The statute is violated "only if corporal injury results from the 'direct application of force on the victim by the defendant.' [Citations.]" (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1477 (*Johnson*).)

### 1.     *Sufficiency of the Evidence*

Gaines argues the evidence is insufficient to support either of the two section 273.5 violations because "the prosecutor failed to present evidence to establish the injuries suffered by [G.D.] and apparently caused by Gaines were attributable to a specific

11

incident"—that is, the incident that occurred in the morning of July 2, 2020, or the incident that occurred in the afternoon on that date. The factual basis for the first of the two section 273.5 counts were events of that morning in a hotel room, when Gaines struck G.D. on the head, shoulders, and back, and kicked her after she fell to the ground. The factual basis for the second section 273.5 count were events occurring in the afternoon of the same day, when Gaines hit G.D. on the head, shoulder, and back while the two were in the car parked in the bank parking lot. As proof that both of these beatings resulted in a "traumatic condition"—a necessary element of a section 273.5 violation (§ 273.5, subd. (a))—the prosecution offered testimony and photographs of the bruising G.D. discovered on the evening of July 2, 2020 on her arms, chest, back, and shoulder. Gaines argues that there is nothing to link the bruises with the first, as opposed to the second, incident on July 2, or vice versa, and that although it is possible both attacks caused portions of the bruising, it is equally possible that only one of the two did. Thus, Gaines argues, "the only way to reach [the] conclusion [that both incidents resulted in the bruising] is through speculation," which is insufficient to support a conviction. (See *People v. Berryman* (1993) 6 Cal.4th 1048, 1081 [speculation is not substantial evidence to support a conviction].)

Gaines's argument misunderstands the applicable substantial evidence standard of review. Applying this standard, we consider whether any reliable and admissible evidence in the record supports the factual findings at issue (see *People v. Bassett* (1968) 69 Cal.2d 122, 138)—here, the findings that both the morning and afternoon beatings contributed to the bruises G.D. found on her body that night. Applying these concepts here, evidence that G.D. found bruises on her body on the evening of July 2, 2020, that these bruises were consistent with the place Gaines struck her in both

12

the morning and afternoon, and that these bruises were not present the day before, all support a reasonable inference that the bruises resulted in part from the beating she received that morning and in part from the beating she received that afternoon.

The authorities Gaines cites do not support a contrary conclusion. In *People v. Beasley* (2003) 105 Cal.App.4th 1078, the defendant was convicted of numerous violations of section 273.5, based on physical altercations occurring on different days, months apart from each other. (*Id.* at pp. 1085–1086.) Although there was evidence of bruising following some of the incidents, the victim testified she "did not know" whether one particular incident—the only one on a particular day—"caused her any additional bruises, and there were no other witnesses to the results of that incident. Accordingly, the evidence was insufficient to permit reasonable jurors to find any traumatic condition resulted from the [particular] beating forming the basis of [the] count" based on that incident. (*Id.* at p. 1086.) As for another incident on another day that formed the basis for another count—again, the only one that occurred on that day—the victim "did not describe, and the prosecutor did not ask about, any wound or injury resulting from this incident . . . [and] there were no witnesses to any wounds or injuries she sustained at that time." (*Ibid.*) Here, by contrast, there is both testimony and photographic evidence of bruising the jury could infer resulted from both July 2 beatings.

*Johnson, supra,* 150 Cal.App.4th 1467 is likewise unhelpful to Gaines, as it addresses the distinct issue of "whether [a] defendant may receive multiple convictions for violating section 273.5 where the convictions are based upon multiple injuries inflicted during a single course of conduct" (*Johnson, supra,* at p. 1474)—namely, a single beating. (*Id.* at pp. 1472–1473.) In deciding this issue, the court needed to consider whether sufficiently distinct traumatic

13

conditions were inflicted during the single beating to support multiple convictions. We need not parse out the harm caused by Gaines in this manner, because the two counts are based on two separate courses of conduct.

Substantial evidence thus supports both convictions under section 273.5.

### 2.    *Jury Instructions*

A court is obligated to instruct the jury on a lesser included offense "whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury[,] [citations] . . . [meaning] ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]" ' that the lesser offense, but not the greater, was committed." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) Gaines argues that, for the same reason the evidence was insufficient to find him guilty of two counts of violating section 273.5, the evidence permitted the jury to conclude that the bruising G.D. found on the evening of July 2 was attributable to only one of the two beatings she received that day, and that Gaines was thus guilty of only one section 273.5 violation (based on the one beating causing the bruising), with the other beating supporting only a conviction for spousal battery—a lesser included offense to a section 273.5 violation, the difference between the two being the lack of traumatic injury to the victim. (See § 243, subd. (e)(1).)

Even assuming, for the sake of argument, the court erred in failing to instruct the jury on spousal battery, any such error would be harmless, because it is not reasonably probable that Gaines would have obtained a different verdict, had the jury received such additional instructions. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 196 [failure to instruct on lesser included offense

14

subject to the state law harmless error test set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836].)  No evidence suggests that one of the beatings G.D. suffered on July 2 was more severe than the other, or that for some other reason one would have left bruising, while the other did not.  Thus, it is not reasonably probable that the jury would have speculated as to which beating the bruising was attributable to.  The court's failure to instruct on the lesser included offense of spousal battery—even assuming, for the sake of argument, that this was error—is not a basis for relief on appeal.

### C.    Hearsay Testimony

Gaines next argues that the court reversibly erred by permitting Rodriguez to testify as to statements G.D. made to Rodriguez on July 2, 2020.  Specifically, Rodriguez testified G.D. stated that she was applying for a loan because she was in an abusive relationship, her abuser had taken her to the bank, she feared what he would do if she did not give him the money, calling the police would only make matters worse, and she feared for her life.  Gaines argues the court incorrectly overruled his hearsay objections to this testimony because it relays out of court statements by G.D. offered for their truth, to which no hearsay exception applies.  The Attorney General counters that several hearsay exceptions apply.

But even assuming, without deciding, that these statements reflect inadmissible hearsay, their admission does not constitute reversible error, because it is not reasonably probable that a result more favorable to Gaines would have been reached if the testimony had not been admitted.  (See *People v. Harris* (2005) 37 Cal.4th 310, 336 [admission of inadmissible hearsay subject to *Watson* state law harmless error test].)  Rodriguez's testimony was not necessary

15

to support any essential element of any of the crimes charged. Gaines argues, however, that Rodriguez's testimony helped secure the convictions by bolstering G.D.'s credibility. Specifically, he argues that because "[G.D.]'s credibility was essential to obtain a conviction, [and] defense counsel effectively impeached [her] credibility by establishing inconsistencies in her testimony[,]" "[a]llowing Rodriguez to improperly bolster [G.D.]'s testimony" in turn bolstered the prosecution's entire case. We are not persuaded. First, other portions of Rodriguez's testimony to which no hearsay objection was (or could have been) made—for example, that G.D. appeared nervous in applying for the loan and began crying when it was denied—also corroborated G.D.'s testimony about the events of that day, including that she was seeking the loan while under duress. More importantly, the phone call recordings played for the jury corroborated—arguably much more strongly than G.D.'s statements to Rodriguez— G.D.'s testimony that Gaines was abusive, that he threatened to harm her if she did not get him money, and that he did this during the relevant time frame. The photographs of G.D.'s bruises and evidence regarding G.D.'s reports to police likewise corroborated her testimony about Gaines being abusive. It is thus not reasonably probable that hearsay testimony relaying G.D.'s statements about the reason she was applying for the loan and the abusive nature of her relationship with Gaines improved the jury's view of G.D.'s credibility to such an extent that the exclusion of that testimony would have changed the jury's verdict.

### D. Sentencing Errors

#### 1. *Sentencing Hearing and Evidence of Prior Convictions*

The court had before it at sentencing a certified record of arrest and prosecution sheet, as well as minute orders, evidencing Gaines's four prior convictions: a 2019 misdemeanor violation of domestic battery (Exh. 12), a 2008 felony conviction for domestic violence (Exh. 13), a 2004 felony conviction for domestic violence (Exh. 14), and a 2001 misdemeanor conviction for domestic violence (Exh. 15). The only prior conviction allegation included in the criminal information was the 2019 domestic violence conviction, which the jury found true.

At the sentencing hearing, the court stated that on count 1 (violation of section 273.5), it was imposing the aggravated term, based on the 2019, 2008 and 2004 convictions. The court, however, went on to explain the aggravated term was also appropriate because "Gaines has a significant criminal history involving this exact crime," specifically the 2004 and 2008 convictions, and a 2018 pandering conviction. "I think that . . . Gaines is a significant risk to the community because I'm seeing he does not change his behavior . . . and any woman in his sights is in danger, and they won't know." The court then asserted that "[a]nytime he goes online and he gets out of custody and starts to do the online dating again, those women are entirely vulnerable to . . . Gaines's lack of respect for women. That's why I believe that the high term is appropriate."

#### 2. *Imposition of Aggravated Term on Count 1, Violation of Section 273.5*

Under section 1170, "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms"

17

(§ 1170, subd. (b)(1)), the middle term is the presumptive term of imprisonment and the trial court must "order imposition of a sentence not to exceed the middle term" unless there are "circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1), (2).) Gaines argues that the court ran afoul of section 1170, because in sentencing him to greater than the presumptively applicable middle term on count 1, the court relied on facts to which he had not stipulated and that the jury had not found true—namely, that Gaines suffered three prior convictions, and that Gaines posed a threat to women he meets online. But section 1170 also provides an exception to the rule that an aggravated sentence must be based on facts found by the jury: "The court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) The 2019, 2008, and 2004 prior convictions on which the court stated it was relying were evidenced by certified records. These are thus an independently sufficient basis for imposing the higher term sentence. This is no less true simply because the court mentioned additional factors not found by the jury as additional bases for justifying an aggravated sentence.

Gaines further argues that these prior convictions "do not justify" imposition of the aggravated term because they are too minor and/or remote in time. Gaines cites no authority for this argument, nor does he even explain why convictions reflecting multiple instances of domestic violence in the past would not justify increasing the sentence for a new offense involving

18

domestic violence. Gaines has not established any error in the court's imposition of the aggravated term for count 1.

### 3. *Clerical Error in the Abstract of Judgment*

Both parties argue that the abstract of judgment incorrectly reflects that a violation of section 273.5 is a serious and/or violent felony. We agree the abstract is incorrect in this respect (see §§ 667.5, subd. (c), 1192.7, subd. (c)), and that the abstract of judgment should be corrected to remove this finding as to count 1.

## DISPOSITION

The court shall correct the abstract of judgment to remove the finding as to count 1 that the violation of section 273.5 reflected therein is a serious and/or violent felony. In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

WEINGART, J.

20