Filed 2/14/24  P. v. Kessler CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>BRIAN JOSEPH KESSLER,<br><br>　　　　Defendant and Appellant. | C097324<br><br>(Super. Ct. No. 2020CR0019317) |

A jury found defendant Brian Joseph Kessler guilty of conspiracy to bring drugs into a state correctional facility.  On appeal, defendant argues that the trial court committed reversible error in admitting hearsay evidence of an unidentified inmate's statements as statements of a coconspirator and the error violated his due process right to a fair trial.  Finding no reversible error, we will affirm the judgment.

## I.  BACKGROUND

While defendant was an inmate at the California Correctional Center in Lassen County, the investigative services unit found a strip of suboxone under the stamp on the

1

envelope of a greeting card addressed to defendant. The greeting card, postmarked February 2, 2019, was addressed from "Cassie Brooks" and stated, "Dear Brian, missing you and Happy Valentine's Day. Love Cass." The name "Cassie Brooks" was not listed in prison records or public records, and the mailing address of "826 Ohio Street, Gridley, California 95948" was not in any public records or home search applications. Cassie Brooks was not an approved visitor for defendant, but defendant's significant other, J.D., was. J.D. was not an approved visitor for any inmate other than defendant.

Officer Jerald Schmidt of the investigative services unit testified that inmates commonly receive strips of suboxone in the mail, because it can be easily concealed and is highly potent. Officer Schmidt also testified that inmates sometimes trade suboxone for services from other inmates, including getting tattoos.

As part of the investigation, Officer Schmidt listened to over 40 digital recordings of phone calls made from the prison to J.D. Several phone calls referenced "Cassie" or "Cassidy" and tattoos. Defendant also mentioned "numbers" in one of his phone calls to J.D. Officer Schmidt explained that "numbers" refers to Green Dot, which is similar to a prepaid credit card. Inmates commonly use Green Dot to buy contraband in jail, and it is common to hear inmates talking about "numbers" when discussing Green Dot transactions. When an inmate wants to buy contraband, he contacts someone outside the jail and asks for a Green Dot number for a specified amount of money. Then, that person gives the numbers to the inmate that wants to buy the contraband. That inmate then gives the numbers to the inmate he is buying contraband from, and the inmate that is selling the contraband contacts someone outside the jail to redeem the value of the numbers.

In a phone call on September 20, 2018, defendant told J.D. that he wanted to get tattoos and asked her to send him ink patterns and pictures of her and their children for inspiration. Defendant also told J.D., "But you know those things that, um, that you get? That you do? . . . They're worth, like, four hundred." J.D. responded, "All right. Well, I'll figure it out." On October 11, 2018, defendant called J.D. again and told her,

2

"[S]omebody's . . . gonna call you up, right? Them – them things are like three hundred in here." Defendant added, "And then I call you with numbers and then you just check the numbers and make sure they're good."

On March 13, 2019, defendant called J.D. and told her, "I really need to talk to Cassie for this weekend." Defendant explained that he wanted a tattoo and said, "I have to talk to her to see what's goin' on to see if I can get it from her. You know what I mean?" On June 12, 2019, defendant called J.D., and she told him that she was getting ready for a doctor's appointment. Defendant asked, "Oh what's it for? Talk to Cassidy?" J.D. responded yes.

On July 26, 2019, defendant called J.D. and told her, "[W]e'll just have Cassidy help ya," while they were discussing her visiting him at the prison. J.D. told defendant that she may not be able to get Cassidy's help but told him she would do her best. The next day, J.D. went to the prison to visit defendant. Officer Schmidt asked J.D. if she had any controlled substances with her, and she told him that she had a prescription for suboxone in her purse. Officer Schmidt looked at the prescription but could not remember the doctor's name. If it had been Cassie or Cassidy, Officer Schmidt would have noted it.

The district attorney charged defendant with conspiracy to bring drugs into a state correctional facility. (Pen. Code, §§ 182, subd. (a)(1), 4573.) The jury found defendant guilty as charged and the trial court sentenced defendant to the low term of two years.

## II. DISCUSSION

On appeal, defendant contends that the unidentified inmate's statements in a January 30, 2019, phone call were not admissible as statements of a coconspirator. (Evid. Code, § 1223.)[1] Specifically, defendant argues that there was insufficient evidence to

---

[1] Undesignated statutory references are to the Evidence Code.

support the preliminary facts required to admit evidence under section 1223. Defendant further asserts that the error was prejudicial and violated his due process rights by rendering his trial fundamentally unfair.[2] We conclude any error was harmless and did not violate defendant's due process rights.

### A. Additional Background

Officer Schmidt also testified about a January 30, 2019 call from an unidentified inmate in the prison to J.D. The unidentified inmate told J.D. he was calling her on behalf of defendant, and that "[defendant] wanted to know how much that number was worth." J.D. responded that she was not sure but could find out. Then, the inmate said, "[Defendant] wanted to know about, uh, about Cassid[y]." J.D. responded, "[I]t[']s on its way."

Defense counsel objected to this testimony on the grounds of hearsay. The People responded that the unidentified inmate's statements were admissible as admissions of a coconspirator in the furtherance of conspiracy. The trial court overruled defense counsel's objection, because it found the evidence was sufficient to establish a conspiracy to bring drugs into the jail. Specifically, the trial court found that there was evidence that defendant told J.D. someone would contact her about numbers, and the unidentified inmate indeed called J.D. and discussed numbers with her. The trial court further found that J.D. responded according to prior conversations she had with defendant from evidence already admitted. Also, she and the unidentified inmate specifically referred to Cassidy. Based on the evidence, the trial court found "there was more than sufficient circumstantial evidence to establish that person as a co-conspirator in the course of the conspiracy."

---

[2] Defendant initially also asserted that the error violated the confrontation clause of the Sixth Amendment of the United States Constitution but later abandoned this claim.

4

*B.*     *Analysis*

It is unnecessary for us to consider whether the trial court abused its discretion in admitting this testimony regarding the unidentified inmate's statements, as we conclude any error was harmless. We review the erroneous admission of hearsay evidence under state law pursuant to *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Duarte* (2000) 24 Cal.4th 603, 618-619.) Under that standard, reversal is not warranted unless "it is reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error." (*Watson, supra*, at p. 836.) "[T]he *Watson* test for harmless error 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 956.) The defendant bears the burden of demonstrating prejudice under this standard. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 201.)

"A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy. [Citations.] [¶] Criminal conspiracy is an offense distinct from the actual commission of a criminal offense that is the object of the conspiracy." (*People v. Morante* (1999) 20 Cal.4th 403, 416, fn. omitted.) However, the "[c]ommission of the target offense in furtherance of the conspiracy satisfies the overt act requirement." (*People v. Jurado* (2006) 38 Cal.4th 72, 121.)

Multiple phone calls between defendant and J.D. established that defendant wanted J.D. to send him suboxone to sell in prison so that he could get tattoos. It is common for inmates to trade suboxone for getting tattoos from other inmates. Defendant told J.D. what the suboxone was worth in prison and that he wanted tattoos. J.D. agreed to help defendant bring suboxone into the prison by saying that she would figure it out. Defendant also discussed "numbers," which is how inmates buy and sell contraband in

5

prison, with J.D. Later, defendant told J.D. that he needed to talk to "Cassie," because he wanted a tattoo. J.D. told defendant that she had a doctor's appointment to talk to "Cassidy." J.D. also said she had a prescription for suboxone. Defendant referenced "Cassidy" again the day before J.D. visited him, and she said she would do her best. The envelope sent to defendant containing the suboxone was addressed from "Cassie Brooks," a person who could not be identified or located, and the return address did not exist. This was substantial evidence supporting the jury's conviction even without the unidentified inmate's statements. Accordingly, defendant has not met his burden to demonstrate it was reasonably probable that he would have received a more favorable result.

As to defendant's due process claim, erroneous admission of evidence is a due process violation only if it makes the trial fundamentally unfair. (*People v. Partida* (2005) 37 Cal.4th 428, 439.) The trial here was not fundamentally unfair. As discussed *ante*, sufficient admissible evidence supported the jury's verdict. Further, the unknown inmate's statements were cumulative to statements between defendant and J.D. and the fact that suboxone was in fact mailed to defendant in prison. Accordingly, there was no due process violation.

## III. DISPOSITION

The judgment is affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
EARL, P. J.

/S/

_____
ASHWORTH, J.*

_____

* Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7