Filed 9/23/24  P. v. Cano CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063913 |
| v. | (Super. Ct. No. INF2201322) |
| SAMUEL CRUZ CANO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Riverside County, Walter H. Kubelun, Judge. Reversed.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A.

Natasha Cortina and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

Following an altercation with a former girlfriend, defendant Samuel Cruz Cano was convicted of felony domestic violence and assault with force likely to cause great bodily injury. He appeals on the ground the trial court should have instructed the jury on lesser included charges as to both counts. We find the trial court should have so instructed the jury and the failure to do so was prejudicial. Cano also challenges the trial court's exclusion of certain evidence at trial; we find that exclusion to be erroneous as well. We reverse the judgment.

STATEMENT OF FACTS

Cano and K.M. began dating in 2020, when they were both 16. They broke up in the spring of 2021 after about a year of dating but continued to engage in occasional sexual relations. On June 10, 2022, while they were cuddling on Cano's bed after one such occasion, K.M. noticed a pair of earrings—not hers—on Cano's nightstand. The earrings made K.M. upset and jealous. She asked Cano whose earrings they were. He said he did not know. K.M. did not believe Cano, so she continued asking him—more than 20 times—whose earrings they were. Cano repeated he did not know.

At trial, Cano and K.M. recounted different versions of what happened next. According to K.M., she got off the bed, called her father to come pick her up, and headed for the bedroom door. Cano stopped her from leaving by standing in the bedroom doorway and grabbing her shoulders. He said he wanted to talk. K.M. just repeated her question about the earrings and, eventually, Cano let her leave the bedroom. K.M. left the house only to discover the gated area in front of the house was locked. K.M. went back into

2

the house and asked Cano to unlock the gate. Cano again tried to talk to K.M., but she did not want to talk and told Cano he was a "manipulating" person. Cano responded by grabbing K.M. from behind and placing his right arm around her neck in a chokehold. He held her in the chokehold for approximately five seconds. K.M. had difficulty breathing and her vision became blurry. After he released her, Cano told K.M. she did not want to see this side of him. K.M., who was scared, went outside and asked her father to come to the gate. As her father walked up, Cano unlocked the gate and K.M. left. K.M. told her father what had happened, and he called the police.

Cano had a somewhat different take on what happened. He testified that K.M. asked him, at least 20 times, who the earrings belonged to and, each time, he said he did not know. He said K.M. was hostile and aggressive while asking about the earrings. Cano denied he made any attempt to grab K.M. or stop her from leaving the bedroom. Instead, Cano testified K.M. left the bedroom and walked out of the house. He followed her to the front door and waited for her to realize the gate was locked.[1] Rather than ask Cano to unlock the gate, K.M. went to the rear of the house and tried to open the sliding door leading out of the house and around the gate. She could not open the sliding door, so Cano opened it for her. After Cano opened the sliding door, K.M. asked him if this was the last time they were going to talk. Cano responded by asking her to please leave.

According to Cano, instead of leaving, K.M. walked back into Cano's bedroom, saying she was going to take a photograph of the earrings. Cano followed her to the bedroom and K.M. pulled out her phone to take a

---

[1] Cano testified he routinely locked the gate after letting anyone into the house.

photograph. Cano stepped in front of K.M. to stop her from taking photographs of his bedroom and K.M. tried to hit him with her metal water bottle. K.M. then reached for a stick sitting on top of Cano's dresser. Because K.M. was trying to hit him, Cano grabbed K.M. from behind in "a hug, like a wrap, just a little to hold on to her arms." He held her around the arms from behind for two to three seconds until she calmed down. Cano then walked K.M. outside to where her father was waiting.

Cano's trial testimony was not the first time he recounted the events of that day. After the police arrived on the day of the incident, Cano described what happened to the investigating officer. The officer's body camera captured Cano's description. Cano told the officer K.M. got "all crazy" when she was asking him about the earrings and threatened to hit him with her metal water bottle. He said K.M. hit him with the water bottle and slapped him around. He stated he "wrapped her up" when she "charge[d]" him and, while she was "wrapped up," he told K.M. "dude I will fuckin' choke you right now, like, I could fuckin' put you out if I wanted to." He reenacted the "wrap" for the officer by placing his right arm across his own chest. He said he held K.M. that way for about three seconds. He imitated K.M. making choking noises while he had her "wrapped up." When specifically asked by the officer, Cano denied hitting K.M. or putting her in a chokehold.

K.M. underwent a forensic examination the same day as the incident. She reported neck pain at a six out of ten on the pain scale and a headache that was a seven out of ten on the pain scale. She did not have any damage to her voice, pain while swallowing, sore throat or any external injuries to her neck. The forensic nurse who performed the examination testified 50 percent of patients who have been strangled do not have external injuries on the neck. K.M. had petechiae, or ruptured capillary vessels, on the

4

bottom of her tongue. The forensic nurse testified petechiae above the area of compression are a common result of strangulation. There was bruising on the left side of K.M.'s chest below her clavicle. Following the incident, the back of K.M.'s neck continued to feel sore for about two weeks.

Cano was charged with felony domestic violence (Pen. Code, § 273.5, subd.(a) [count 1]),[2] assault with force likely to cause great bodily injury (§ 245, subd. (a)(4) [count 2]), and misdemeanor false imprisonment (§ 236 [count 3]). He was convicted on counts 1 and 2 and acquitted on count 3. The court suspended imposition of sentence and placed him on probation for 36 months. Cano timely appealed.

## DISCUSSION

Cano argues the trial court erred by not instructing the jury on lesser included offenses for counts 1 and 2. Cano also argues the court erred in excluding evidence specifying the type of intimate contact between Cano and K.M. prior to their argument because such evidence could have explained the petechiae on the underside of K.M.'s tongue.

## I.

### LESSER INCLUDED OFFENSES

"As a matter of state constitutional law, courts must instruct on all lesser offenses necessarily included within the filed charges if there is substantial evidence of the lesser offense, whether or not the parties request or oppose the instruction. [Citations.] The primary aim is to give the jury the opportunity to render a verdict no harsher or more lenient than the evidence

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

5

merits, thus facilitating the jury's 'truth-ascertainment function.'" (*People v. Fugit* (2023) 88 Cal.App.5th 981, 988.)

Cano contends the trial court should have, sua sponte, instructed the jury on: (1) battery of a person in a dating relationship (§ 243, subd. (e)(1))—a lesser included offense of felony domestic violence (count 1) and (2) simple assault (§ 240)—a lesser included offense of assault with force likely to cause great bodily injury (count 2).

"'In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether "there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt . . . ."'" (*People v. Mitchell* (2019) 7 Cal.5th 561, 583.) "'Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused.'" (*People v. Hubbard* (2020) 52 Cal.App.5th 555, 567.) Failure to instruct on a lesser included offense is reviewed de novo. (*People v. Nieves* (2021) 11 Cal.5th 404, 463.)

A. *Lesser Included Instruction on Battery of a Person in a Dating Relationship*

The jury convicted Cano of felony domestic violence (count 1), which is defined in the Penal Code as willfully inflicting a corporal injury on someone with whom he has or had a dating relationship, resulting in a traumatic condition. (§ 273.5.) A traumatic condition is "a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (d).)

Cano argues the court should have instructed the jury on the lesser included charge of battery of a person in a dating relationship, which is

6

defined as the willful and unlawful use of force or violence against someone with whom he has or had a dating relationship. (§ 243, subd. (e)(1).) Both felony domestic violence and battery of a person in a dating relationship involve willful touching. The primary difference between the two charges, as applicable to this case, is whether the touching caused a traumatic condition.

K.M. claims Cano held her in a chokehold resulting in more than one traumatic condition, i.e., a headache, a pain in her neck, petechiae on the bottom right side of her tongue, and a bruise on her left chest below her clavicle. She presented forensic evidence from the examining nurse that the claimed traumatic conditions were consistent with a chokehold.

Cano admitted he willfully touched K.M. He denied, however, he held her in a chokehold or caused a traumatic condition. Cano claimed he grabbed K.M. around her middle, from behind, to stop her from attacking him. There was no testimony at trial that holding K.M. around her middle could have caused the injuries of which she complained or any other traumatic condition. Cano's testimony offered substantial support for a charge of battery of a person in a dating relationship and the trial court should have instructed the jury on the lesser included charge.

This is not the end of the inquiry, however. We also must assess, under the harmless error test set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*), whether the failure to instruct on the lesser included charge was prejudicial. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195–196.) Under *Watson*, an error is prejudicial when "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra,* at p. 836.) "'"'[P]robability" in this context does not mean more likely than not, but merely a *reasonable chance, more than an abstract possibility*.'"'" (*People v. Hendrix* (2022) 13 Cal.5th 933,

944, italics added.) For the reasons set forth below, we conclude there is a reasonable chance the jury would have convicted Cano of the lesser included crime of battery of a person in a dating relationship.

First, the evidence supporting a traumatic condition was not conclusive. Although K.M.'s claimed injuries were consistent with a chokehold, the testimony at trial did not irrefutably establish there were such injuries or that they resulted from a chokehold. The forensic nurse testified the headache and pain claimed by K.M. were based on K.M.'s self-report and could not be verified by any external measure. The nurse also testified the petechiae could have resulted from "multiple causes" besides a chokehold, none of which were excluded as part of the examination. Finally, there was no testimony specifically linking the bruise below the clavicle to the claimed chokehold.

Second, the jury acquitted Cano on the charge of false imprisonment (count 3), which might suggest the jurors did not accept K.M.'s version of events. K.M. testified Cano grabbed her by her shoulders and stopped her from leaving the bedroom. The jury was instructed Cano was guilty of false imprisonment if it was shown Cano "intentionally or unlawfully confined" K.M. against her will. In closing, the prosecutor asserted Cano was guilty of false imprisonment because he placed his hands on K.M.'s shoulders to keep her from leaving the bedroom, even if it was only for a moment. The jury returned a not guilty verdict on the charge of false imprisonment, suggesting they did not accept K.M.'s testimony, at least on that point.

In sum, Cano admitted willfully touching K.M. in a manner not consistent with her will. But the jury had only one option—felony domestic violence—to address such a touching. The evidence, however, supported a

finding of battery of a person in a dating relationship, and there is a reasonable chance Cano would have been convicted of battery of a person in a dating relationship if the jury had been presented with that option. (*People v. Hendrix, supra,* 13 Cal.5th at p. 944.) The error was prejudicial.

B. *Lesser Included Instruction on Simple Assault*

The jury found Cano guilty of assault with force likely to cause great bodily injury (count 2), which is willfully and knowingly engaging in an act that, by its nature, would directly and probably result in the application of force to another and the force used was likely to produce great bodily injury. (§ 245, subd. (a)(4).) "'Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate.'" (*People v. Sandoval* (2020) 50 Cal.App.5th 357, 361.)

Cano argues the court should have instructed the jury on the lesser included charge of simple assault, which is willfully engaging in an act that, by its nature, would directly and probably result in the application of force to someone. (CALCRIM No. 915.) The primary difference, as applicable here, is the level of force—force likely to cause great bodily injury or simple force.

The analysis here is much the same as the analysis for the lesser included charge of simple battery. Cano and K.M. gave two different versions of the story. K.M.'s version of a five-second chokehold supports a finding of assault with force likely to cause great bodily injury. Cano's version of "wrapping up" K.M. around her chest for two to three seconds to keep her from hitting him would support a finding of simple assault. The trial court should have instructed the jury on both charges, but it did not. For the reasons stated in connection with the lesser included charge of simple battery, the error was prejudicial.

9

## II.

### EXCLUSION OF EVIDENCE

During his direct examination of Cano, Cano's counsel asked Cano if K.M. had performed oral sex on him before the incident. K.M. objected on the grounds of relevance and the trial court sustained the objection. At the close of the day, outside the presence of the jury, Cano's counsel raised the issue again and explained why he asked the question. During cross-examination, the forensic nurse testified petechiae could result from application of pressure to the area where the petechiae appear. Counsel intended to argue the petechiae on the underside of K.M.'s tongue could have been caused by the pressure of oral sex.

The following morning, the trial court explained its reasoning for excluding evidence related to the possibility of oral sex between K.M. and Cano before the incident. Specifically, the court found the probative value of such evidence was substantially outweighed by the danger of undue prejudice and the possibility of confusing the issues and misleading the jury.

We review a trial court's exclusion of evidence under Evidence Code section 352 for abuse of discretion. "A trial court's decision to admit or exclude evidence ""will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice."""" (*People v. Mataele* (2022) 13 Cal.5th 372, 413–414.)

The trial court found evidence of the possibility of oral sex between K.M. and Cano unduly prejudicial. "*Undue* prejudice springs from evidence which has ""very little effect on the issues."""" (*O'Mary v. Mitsubishi Electronics America, Inc.* (1997) 59 Cal.App.4th 563, 575.) The issue in this case was whether Cano placed K.M. in a chokehold. K.M. presented the petechiae as evidence he did. The possibility the petechiae could have been

caused by oral sex preceding the incident, rather than a chokehold, was probative on the issue. Evidence of the oral sex did not have """"very little effect on the issues.""""" (*Ibid.*) Further, the court did not articulate the undue prejudice to K.M. from admission of the evidence. K.M. had already testified she and Cano engaged in sexual relations before the incident; the specific nature of their engagement does not trigger any kind of prejudice.

The trial court also explained that it feared the evidence would confuse the issues and mislead the jury. The cause of the petechiae is exactly what the jury should be considering; it is the issue. The proffered evidence was """"at the heart of the defense""""" and its exclusion was an abuse of discretion. (*O'Mary v. Mitsubishi Electronics America, Inc., supra,* 59 Cal.App.4th at p. 576.)

DISPOSITION

The judgment is reversed.[3]


GOODING, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.

---

[3] Cano also argues the judgment should be reversed for cumulative error. Because we reverse for other reasons, there is no need to address the cumulative error argument.