Filed 2/18/24  P. v. Davis CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HOLLIS MORRELL DAVIS,<br><br>    Defendant and Appellant. | 2d Crim. No. B329841<br>(Super. Ct. No. TA151279)<br>(Los Angeles County) |

Hollis Morrell Davis appeals from the judgment entered following a jury trial.  He was convicted of conspiracy to commit first degree residential robbery (Pen. Code, §§ 182, 211);[1] first degree robbery (§ 212.5); first degree felony murder with a robbery special circumstance finding (§§ 187, subd. (a), 190.2, subd. (a)(17)(A)); and possession of a firearm by a felon (§ 29800, subd. (a)(1)).  The jury found true allegations that, in the commission of the conspiracy, robbery, and murder, appellant had personally used a firearm.  (§§ 12022.5, subd. (a), 12022.53,

---

[1] All statutory references are to the Penal Code.

subd. (b).)  For the special-circumstance murder, appellant was sentenced to life imprisonment without the possibility of parole plus 10 years for the firearm enhancement.  For possession of a firearm by a felon, he was sentenced to a consecutive three-year term.  Sentences on the remaining convictions were imposed and stayed pursuant to section 654.

The trial court instructed the jury that appellant was charged with murder "under a theory of first degree felony murder."  Appellant contends the trial court prejudicially erred because it failed to instruct sua sponte on the lesser included offenses of involuntary manslaughter and second degree implied malice murder.

In addition, appellant claims the trial court (1) applied the wrong legal standard in denying his motion for new trial under section 1181, subdivision 6; and (2) made a restitution award that "is unauthorized and unsupported by substantial evidence."

The People concede that, in ruling on the motion for new trial, the trial court applied the wrong legal standard.  But they contend the error was harmless.  We disagree.  We vacate the sentence, reverse the order denying the motion for new trial, and remand the matter to the trial court with directions to rehear and redetermine the motion.  In all other respects, we affirm.

*Facts*

People's Evidence

Anthony Bolden told appellant that he "knew somebody who has some stuff he can rob."  Appellant "said yeah, he'll do it," but he needed a gun to commit the robbery.  Johrod "Baby Lane" Ying agreed to provide a handgun.

On January 17, 2020, appellant, Bolden, and Ying went to William Jones's house for the purpose of committing the robbery.

Jones said he knew of a house where "there's money, guns, and drugs." Jones drove appellant, Bolden, and Ying to the house. Jones "pointed to the side of the house, and he said, it's the first window on the left side." Appellant "asked [Ying] for the gun, and . . . [Ying] said be careful, it's ready." Appellant took the gun and got out of the vehicle.

Julian Guerrero was asleep inside the house when appellant entered his bedroom through a window. Appellant pointed a handgun at Guerrero and asked, "Where's the stuff at?" Guerrero understood "stuff" to mean drugs. Appellant "screamed, 'I'm going to shoot you.'"

Guerrero tried to grab the gun. Appellant "started swinging [the gun], trying to pistol-whip" Guerrero. Appellant fired a single shot into the wall. It appeared to Guerrero that the firing was "accidental."

Guerrero saw appellant "hopping out the window." Appellant stole $708 in cash and a bag containing 1,000 Xanax pills.

After appellant's departure, Guerrero walked into the room on the other side of the wall into which the shot had been fired. His brother's girlfriend was lying on the bed. She had been shot in the head. The wound was fatal.

Defense Evidence

Appellant testified as follows: He volunteered to commit the robbery of Guerrero, but "[he] had no intention[] of robbing that person." "All I had was $10 to my name. I was going to sell the gun or trade it for some dope."

Appellant "walked to the side window [of the house]. [He] knocked 'cause it was closed. . . . [Guerrero] opened it." Guerrero "said, what you want? How much you want?" Appellant replied,

3

"I got $10 or $20, and I'm trying to get some like meth, I just got out of jail." Guerrero "said, come in." Appellant "climbed through the window" and entered the house.

Appellant "hand[ed] [Guerrero] the money [to purchase the drugs]." Guerrero "turn[ed] his back towards [appellant]." Appellant "assumed [Guerrero] was going to go get some dope." Appellant "pull[ed] the gun out of [his] pocket" and said, "I also got this for sale."

When Guerrero saw the gun, he "rushed" toward appellant and grabbed him. While they were "tussling for the gun," it was accidentally fired. Appellant "never at any time hit [Guerrero], tried to hit him, [or] pistol whipped him."

After the firing of the gun, appellant "was absolutely scared." He left through the open window and ran away.

*Any Error in Not Instructing Sua Sponte*
*on Lesser Included Offenses Was Harmless*

"Under California law, trial courts must instruct the jury on lesser included offenses of the charged crime if substantial evidence supports the conclusion that the defendant committed the lesser included offense and not the greater offense." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 196 (*Gonzalez*).) "'In deciding whether evidence is "substantial" in this context, a court determines only its bare legal sufficiency, not its weight.' [Citation.] Thus, 'courts should not evaluate the credibility of witnesses, a task for the jury' [citation], and uncertainty about whether the evidence is sufficient to warrant instructions should be resolved in favor of the accused [citation]. Even evidence that is unconvincing or subject to justifiable suspicion may constitute substantial evidence and may trigger the lesser-included-offense

4

requirement." (*People v. Vasquez* (2018) 30 Cal.App.5th 786, 792.)

"We review the trial court's failure to instruct on a lesser included offense de novo, considering the evidence in the light most favorable to the defendant." (*People v. Campbell* (2020) 51 Cal.App.5th 463, 501.) Appellant claims "[t]he record, *viewed in the light most favorable to the defense* [citations], . . . supported a finding that [he] didn't act with the intent to commit robbery necessary for felony murder . . . ."

California courts "have applied two tests in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228.)

Appellant was convicted of felony murder, but the information did not charge this specific offense. The murder count alleged in general terms that appellant had acted "with malice aforethought."[2] "[A]s a matter of law malice is not an element of felony murder." (*People v. Dillon* (1983) 34 Cal.3d 441, 475.)

_____

[2] The murder count stated: "On or about January 17, 2020, in the County of Los Angeles, the crime of MURDER, in violation of PENAL CODE SECTION 187(a), a Felony, was committed by HOLLIS MORRELL DAVIS, who did unlawfully, and with malice aforethought murder JOLYNN FINLAY, a human being."

Based on his testimony, appellant contends the trial court prejudicially erred in failing to instruct sua sponte on involuntary manslaughter and second degree implied malice murder as lesser included offenses of the information's murder charge. "Generally, involuntary manslaughter is a lesser offense included within the offense of murder." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1145.) "Although it is settled that '[s]econd degree murder is a lesser included offense of first degree murder' [citation], [our state Supreme Court has] yet to decide whether second degree murder is a lesser included offense of first degree murder where, as here, the prosecution proceeds only on a theory of first degree felony murder." (*People v. Taylor* (2010) 48 Cal.4th 574, 623; accord, *People v. Westerfield* (2019) 6 Cal.5th 632, 717.)

"Involuntary manslaughter is 'the unlawful killing of a human being without malice aforethought and without an intent to kill.'" (*People v. Rogers* (2006) 39 Cal.4th 826, 884.) "'Malice may be either express or implied. It is express when the defendant manifests "a deliberate intention unlawfully to take away the life of a fellow creature." [Citation.] It is implied . . . "when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life" [citation]. . . .'" (*People v. Taylor* (2004) 32 Cal.4th 863, 867-868.)

We need not determine whether the trial court erred in not instructing sua sponte on the allegedly lesser included offenses. If it had erred, the error would not have been prejudicial. "Although [our state Supreme Court has] long recognized the duty to instruct on lesser included offenses under *California* law,

6

neither [that court] nor the United States Supreme Court recognizes a similar duty to instruct on lesser included offenses under *federal constitutional* law—at least in noncapital cases." (*Gonzales*, *supra*, 5 Cal.5th at p. 198.)  Thus, "[t]he [alleged] failure to instruct on lesser included offenses supported by substantial evidence [is] state law error." (*Id*. at p. 196; accord, *People v. Schuller* (2023) 15 Cal.5th 237, 256-257, 260.)  "Because we are addressing state law error, [to obtain a reversal appellant] must show that[, if the jury had been instructed on the allegedly lesser included offenses,] a different result [would have been] reasonably probable under the *Watson* standard.  (See [*People v.*] *Watson* [(1956)] 46 Cal.2d [818,] 836-837 . . . .)" (*Gonzales*, *supra*, at p. 201.)

The People argue, "[A]ny error was harmless because the jury returned a true finding on the felony-murder special circumstance allegation of robbery."  The argument is based on *Gonzalez*, *supra*, 5 Cal.5th 186.  There, our Supreme Court concluded that a true finding on a felony-murder special circumstance allegation may show that the failure to instruct on lesser included offenses was harmless where "the jury's special circumstance determination required findings beyond those necessary for a felony-murder conviction . . . ." (*Id*. at p. 209; see also *id*., at pp. 201, 206.)  The court stated, "We express no opinion as to whether this conclusion would apply in cases where the special circumstance finding does not require findings in addition to those necessary for a felony-murder conviction . . . ." (*Id*. at p. 206, fn. 6.)

Here, the special circumstance instruction did not require findings in addition to those required by the felony-murder

instruction.[3]  Thus, the jury's special-circumstance finding added nothing to its felony-murder verdict.  "Once the jury returned a

---

[3] The special circumstance instruction provided:

"The defendant is charged with the special circumstance of murder committed while engaged in the commission of First Degree Residential Robbery in violation of Penal Code section 190.2(a)(17).

"To prove that this special circumstance is true, the People must prove that:

1. The defendant committed First Degree Residential Robbery;

2. The defendant intended to commit First Degree Residential Robbery;

AND

3. The defendant did an act that caused the death of another person.

" . . .

"The defendant must have intended to commit the felony of First Degree Residential Robbery before or at the time of the act causing the death."

The felony-murder instruction provided:

"The defendant is charged in Count 3 with murder, under a theory of first degree felony murder.

"To prove that the defendant is guilty of first degree murder under this theory, the People must prove that:

1. The defendant committed First Degree Residential Robbery;

2. The defendant intended to commit First Degree Residential Robbery;

AND

3. While committing First Degree Residential Robbery, the defendant caused the death of another person.

"A person may be guilty of felony murder even if the killing was unintentional, accidental, or negligent.

" . . .

8

guilty verdict on felony murder, a true finding on the robbery-murder special circumstance was a foregone conclusion." (*Gonzalez*, *supra*, 5 Cal.5th at p. 213 (dis. opn. of Liu, J.).)

Nevertheless, "a reasonable probability [of a different result] does not exist if 'the jury necessarily decide[d] the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions.'" (*Gonzalez*, *supra*, 5 Cal.5th at p. 200, fn. 4.) Here, the jury necessarily decided the factual questions posed by the omitted instructions adversely to appellant under the properly given instruction for conspiracy to commit first degree residential robbery.

Appellant claims, "The jurors . . . easily could've found . . . that the intent to commit robbery necessary for felony murder . . . hadn't been proven." But the conspiracy instruction and guilty verdict show that the jury unequivocally determined that appellant had the requisite intent. The jury was instructed that, to prove the conspiracy charge, "the People must prove that: [¶] 1. [Appellant] intended to agree and did agree with William Jones, Anthony Bolden or Johrod Ying to commit First Degree Residential Robbery; [¶] 2. At the time of the agreement, [appellant] and the other alleged members of the conspiracy intended that one or more of them would commit First Degree Residential Robbery."

In the conspiracy guilty verdict the jury expressly found that on January 17, 2020, appellant had committed the following overt acts "for the purpose of carrying out the objectives and

---

"The defendant must have intended to commit the felony of First Degree Residential Robbery before or at the time that he caused the death."

purposes of the aforesaid conspiracy": (1) Appellant and his co-conspirators "drove by Guerrero's house. Jones pointed out Guerrero's house." (2) "Ying gave [appellant] a handgun *for the purpose of robbing Guerrero*." (Italics added.) (3) "[A]fter scoping out Guerrero's house, Jones let [appellant] out of the car." (4) Appellant's co-conspirators "waited for [appellant] to complete the robbery." (5) "[A]fter the robbery, [appellant] ran back to the car."

Moreover, the true findings on the firearm-use enhancements show that the jury rejected appellant's testimony that he had merely tried to sell the gun to Guerrero and had not intentionally threatened or hit Guerrero with the gun. The jury was instructed: "Someone personally uses a firearm if he or she *intentionally* does any of the following: 1. Displays the weapon in a menacing manner; 2. Hits someone with the weapon; OR 3. Fires the weapon." (Italics added.)

"In light of these additional findings and the presumption that juries understand and follow instructions, the . . . finding[s] prevent[] [appellant] from establishing a reasonable probability that the jury would have reached a different result absent the trial court's failure to instruct on [the allegedly] lesser included offenses of [involuntary manslaughter and second degree implied malice murder]." (*Gonzalez, supra*, 5 Cal.5th at p. 201.)

Appellant asserts, "Under proper instructions, the jurors would've had the choice to convict appellant of a lesser homicide offense . . . if the jurors accepted appellant's version of events." The jury clearly did not accept his version.

10

*In Denying Appellant's Motion for New Trial,*
*the Court Applied the Wrong Legal Standard*

Section 1181, subdivision 6, provides that a defendant may move for a new trial "[w]hen the verdict . . . is contrary to law or evidence." Pursuant to that subdivision, appellant moved for a new trial on the ground that "the weight of the evidence was insufficient to support the verdicts." In the motion appellant stated: "In determining a motion for a new trial on the grounds of insufficiency of the evidence, the trial judge does not review the jury's determination, but weighs the evidence and exercises an independent judgment, as if there were no jury at all." "This court must review the evidence as a 13th juror." (Bold and capitalization omitted.)

"The [trial] court extends no evidentiary deference in ruling on a section 1181(6) motion for new trial. Instead, it independently examines all the evidence to determine whether it is sufficient to prove each required element beyond a reasonable doubt *to the judge,* who sits, in effect, as a '13th juror.' [Citations.] If the court is not convinced that the charges have been proven beyond a reasonable doubt, it may rule that the jury's verdict is 'contrary to [the] . . . evidence.'" (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133 (*Porter*).)

Appellant contends, and the People concede, that the trial court applied the wrong legal standard in denying the motion for new trial. We agree. Instead of independently examining the evidence, the trial court applied the substantial evidence standard that appellate courts use in reviewing the sufficiency of the evidence. The trial court stated: "[T]he court finds that there's more than sufficient evidence to uphold the conviction on an appeal on this case. So the motion for a new trial is denied."

11

The People acknowledge, "Because section 1181, subdivision (6) requires a court to independently weigh the evidence and determine its credibility, and the court's denial refers to the standard used in appellate review, the court used the incorrect legal standard."

The People argue that the trial court's error was harmless "because the court's subsequent statements about the evidence show the court would have denied the motion using the correct legal standard." (Bold and capitalization omitted.) The "subsequent statements" were as follows: "As to Penal Code section 12022.53(b), the court clearly understands its discretion to strike or dismiss the allegation in the interest of justice. The court sees no such interest and chooses not to exercise this discretion. The defendant armed himself prior to going into the robbery." "If the law were to change to give this court the discretion to dismiss or strike any count or allegation in the interest of justice, this court would not exercise such discretion."

The People assert, "These statements show that the court implicitly gave appellant 'the benefit of its independent conclusion as to the sufficiency of the credible evidence' and that it believed the prosecution witnesses." But the statements pertained only to the court's exercise of its discretion to strike enhancements or counts. The statements do not show that the trial court independently determined that each of the required elements of the charged offenses had been proved "beyond a reasonable doubt *to the judge*." (*Porter, supra*, 47 Cal.4th at p. 133.)

"We review the trial court's denial of a motion for a new trial for abuse of discretion. [Citation.] . . . Here, the trial court's comments suggest it did not independently review the evidence

12

and decide the proper weight to accord it. . . . In sum, the trial court did not articulate the correct standard of review, failed to act as a 13th juror to review and independently evaluate the evidence, and failed to give [appellant] the benefit of its independent assessment regarding the sufficiency of credible evidence to support the verdicts. As such, we reject the [People's] contention that a rehearing is not required." (*People v. Watts* (2018) 22 Cal.App.5th 102, 115.)

*Restitution Award*

The trial court ordered appellant "to pay restitution to the Victim Compensation Board in the amount of $6,261.80 plus ten percent interest beginning on today's date [March 28, 2023]." Appellant contends, "This award is unauthorized and unsupported by substantial evidence, violates [his] federal due process rights . . . , and must be reversed because the prosecution didn't present bills or sworn statements from the custodian of records to establish this amount, as required by section 1202.4, subdivision (f)(4)(B)."

The People correctly claim the contention is forfeited because appellant failed to object below to the restitution order. (*People v. Mays* (2017) 15 Cal.App.5th 1232, 1237 ["A defendant wishing to argue on appeal that there is no factual basis for a restitution order must object on that ground in the trial court to preserve the issue for appeal"].) We reject appellant's argument that his contention "involves 'pure questions of law' that may be raised for the first time on appeal." "To the contrary, the issue is factual, and the record concerning this factual issue was not . . . developed in the trial court." (*Ibid.*)

13

*Disposition*

The sentence is vacated. The order denying appellant's motion for new trial is reversed insofar as it rejected appellant's claim that the verdict is contrary to the evidence. (§ 1181, subd. (6).) The matter is remanded to the trial court with directions to rehear and redetermine the section 1181, subdivision (6) motion. The court shall apply the correct legal standard explained in this opinion. If the motion is granted, the court shall provide appropriate relief as authorized by section 1181, subdivision (6). If the motion is denied, the court shall reinstate the original sentence. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

14

Ricardo R. Ocampo, Judge

Superior Court County of Los Angeles

_____

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Ana R. Duarte, Deputy Attorney General, for Plaintiff and Respondent.