Filed 6/6/25 P. v. Rodriguez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN RODRIGUEZ,<br><br>    Defendant and Appellant. | E081589<br><br>(Super. Ct. No. RIF2200825)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Judge.  Affirmed.

Robert E. Boyce, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, and Tyler L. Krentz, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

A jury convicted defendant and appellant Juan Rodriguez of sexual penetration of a child 10 years or younger by a person 18 years or older (Pen. Code, § 288.7, subd. (b)), and the trial court sentenced him to 15 years to life in prison. Defendant contends the trial court prejudicially erred by failing to instruct the jury on battery as a lesser included offense. We affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe, then five years old, went to stay with her grandparents when her parents contracted COVID-19. Defendant rented a room in the house.

One morning, defendant had the day off work, so he began drinking around noon and continued drinking into the afternoon. In the late afternoon, Jane Doe and her siblings were playing in the front yard while their grandparents were supervising and defendant was sitting at a table in the yard drinking. By that point, he was "really drunk, super drunk." At some point, Jane Doe's siblings went inside, her grandmother went to shower, and her grandfather went to put a trash can away, leaving Jane Doe alone with defendant.

Jane Doe testified about what happened next as follows. Defendant told her to sit on his lap, which she did. Jane Doe quickly told him to let her go so she could get off his lap because she "felt like he was doing something" to her, but defendant refused.

Defendant began "touching [her]" and "put[ting] his hand in [her] private part," which made her feel like "there was a fire." He did so by placing one of his arms around her and using his other hand to penetrate her. When she later went to urinate, it hurt where defendant had touched her.

At another point in her testimony, however, Jane Doe said that defendant touched her "on top of [her] clothes" and did not touch her underneath her clothes. Jane Doe explained that as she sat on defendant's lap, he had "one of his arms around [her], and then he touched [her]." She then got off his lap while "his arms were around [her]," and she went to use the bathroom.

Jane Doe's grandmother testified that Jane Doe knocked on the bathroom door while she was showering, knocked "really hard" on the door, and said, "'Grandma, I need to pee.'" Right after she was let in, Jane Doe said, "'Aye, Grandma, it hurts, it hurts.'" Jane Doe's grandmother asked what was wrong, and Jane Doe said repeatedly, "My cheese hurts" while crying and seeming "desperate" and moving around in pain. (Later testimony confirmed that Jane Doe referred to her vagina as her "cheese.")

Jane Doe's grandmother did not understand what Jane Doe meant by "cheese," so she got Jane Doe's brother, N., to try to translate. Jane Doe then told her grandmother and N. that defendant used his fingers to penetrate her and that "it hurt." She told them both that defendant "'put his finger in'" and touched her "inside her shorts" and that he "wouldn't stop" even though she "told him to stop." Jane Doe's grandmother told N. to call their mother because Jane Doe was in danger.

3

Jane Doe's mother arrived shortly after the call and immediately took her to the emergency room. While driving there, Jane Doe told her mother that defendant "had touched her, that he had put his fingers in her vagina," and that he would not let go of her even though she told him to.

Law enforcement scheduled a child abuse examination, which Nurse M. performed at 3:00 a.m. in the morning after the incident. Nurse M. noted increased redness and tenderness on Jane Doe's genital area, outside her vagina, and on the clitoral hood, periurethral tissue, and hymen area. There was an abrasion near the opening of the vaginal area. Nurse M. took photographs and swabbed Jane Doe's genital area.

Doctor G. reviewed Nurse M.'s photographs and documentation. In her opinion, there was "evidence of penetrating vaginal trauma." Specifically, the photographs showed a tear in Jane Doe's perineovaginal tissue, the area around the vagina. According to Doctor G., this was consistent with sexual abuse because it can be caused by a fingernail and would have caused the burning sensation Jane Doe experienced when she tried to urinate.

During a follow-up exam 10 days later, Doctor G. no longer saw a tear in Jane Doe's paravaginal area. Jane Doe also did not complain of pain when urinating. In Doctor G.'s view, the exam results further supported a finding of sexual abuse because they were consistent with a prior injury that typically "heals very rapidly." Doctor G. thus believed "sexual abuse is highly suspected." The only more "definite evidence" that

4

would have changed her opinion from "highly suspected" sexual abuse to "confirmed" sexual abuse would have been the presence of semen or sperm.

DNA retrieved from swabs on Jane Doe's vulva and perianal levels revealed a "low level amount of DNA" from two males. No DNA was detected on the vestibule swab, which was more internal than the other swabs.

Jane Doe and N. were later forensically interviewed. During her interview, Jane Doe said that a man at her grandparents' house was sitting on a chair outside and told her to hug him, and then he "just went through [her] pants, [her] undies," "and then he grabbed . . . this right here," which she referred to as her "cheese." The man touched her "inside . . . really hard." She told him it hurt but he would not let go. After she got away, she went to urinate and it hurt.

N. told the forensic interviewer that his grandmother called for him because Jane Doe was in pain. Jane Doe was crying and said it burned when she tried to urinate. She told N. and their grandmother that she could not urinate because defendant had touched her "cheese" while sitting on his lap.

When law enforcement interviewed defendant the day after the incident, his story changed repeatedly. He claimed he had difficulty recalling what had happened. He first said that "maybe I had [Jane Doe] sitting on my lap." He then denied she had sat on his lap, claiming that he did not "really remember that." Then, he stated that "maybe" she had sat on his lap, but repeated that he could not "really remember very well." Not long after saying that, he said that she did sit on his lap, but only briefly. Later, he again

5

claimed he could not remember. Eventually, he again admitted that Jane Doe sat on his lap when her grandfather was not around.

At trial, however, defendant twice testified that Jane Doe never sat on his lap. He could not recall with certainty whether he had ever touched her, but did not think he had. But he specifically denied ever trying to touch her genitals, sticking his hands down her pants, or touching her inappropriately.

## III.

## DISCUSSION

The trial court instructed the jury on sexual penetration of a child 10 years of age or younger (CALCRIM No. 1128) and attempted sexual penetration of a child 10 years of age or younger (CALCRIM No. 460), but did not instruct the jury on battery. Defendant contends the trial court erred by failing to do so because (1) battery is a lesser included offense of sexual penetration of a child 10 years of age or younger, and (2) there was substantial evidence that he committed only a battery of Jane Doe.

We assume without deciding that defendant is correct on both points. We conclude, however, that any error was harmless.

The parties agree, as do we, that we review this kind of instructional error under the *Watson* standard, which asks whether it is reasonably probable defendant would have achieved a more favorable result had the error not occurred. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195-196; *People v. Watson* (1956) 46 Cal.2d 818, 836.) "[T]he *Watson* test for harmless error 'focuses not on what a reasonable jury *could* do, but what such a jury

6

is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.'" (*People v. Beltran* (2013) 56 Cal.4th 935, 956.)

Here, we must determine whether it is reasonably probable that the jury would have convicted defendant of battery had the trial court instructed the jury on that offense. We conclude that it is not reasonably probable.

To begin with, defendant unequivocally testified that he never touched Jane Doe inappropriately. In other words, defendant's defense theory was that no crime occurred. If the jury believed defendant, then it would have acquitted him. The fact that it did not do so suggests that any instructional error was harmless. (*People v. Chenelle* (2018) 4 Cal.App.5th 1255, 1265 [failure to instruct on battery in child sex abuse case harmless because defendant was not guilty of any offense if jury believed he did not inappropriately touch victim].)

Although at one point during her testimony Jane Doe stated defendant only touched her above her pants, she repeatedly stated before and after that statement that defendant penetrated her. In her forensic interview, Jane Doe unambiguously stated that defendant penetrated her. And immediately after the incident, Jane Doe told her grandmother and N. that defendant penetrated her. Then, at trial, she stated multiple

7

times that defendant penetrated her. If the jury believed Jane Doe's testimony that defendant did not penetrate her and only touched her above her clothes, then they would not have found that he committed a sexual penetration of Jane Doe. (*People v. Lewis* (2001) 25 Cal.4th 610, 646 ["Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions."].)

What's more, Jane Doe's multiple statements that defendant penetrated her were corroborated by her medical exam done shortly after the incident, which revealed that she had suffered a tissue tear in her vaginal area and presented with tenderness and redness in the area. Because of this evidence and the fact that the tear had resolved by the time of her follow-up exam about 10 days later, Doctor G. opined that sexual abuse was "highly suspected." This was strong evidence that defendant committed a sexual penetration of Jane Doe, not just a battery.

By contrast, the defense evidence defendant relies on in arguing for reversal was comparatively weak. Defendant first argues that Jane Doe's testimony "was clear that [he] only touched her over and *not* under the clothing." As explained, Jane Doe consistently testified before and after that statement that defendant digitally penetrated her. Again, the jury's verdict shows that it found this testimony true.

Defendant next emphasizes that Jane Doe's DNA was not found on his fingernail clippings or on his "hand swabs." As to the fingernail clippings, there is no evidence that the clippings, though collected, were tested for DNA. And there is no evidence his hands

8

were swabbed for DNA.  The only swabs noted in the record were buccal (inner cheek) swabs.

Given the jury's finding that defendant sexually penetrated Jane Doe and the strong evidence supporting that finding, we conclude it is not reasonably probable that the jury would have found defendant guilty of a battery only had it been instructed on that offense.  The trial court's error, if any, in failing to give a battery instruction was therefore harmless.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

McKINSTER

Acting P. J.

FIELDS

J.

9